# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 96-CA-01419-SCT

*THOMAS A. TRAXLER*

*v.*

*MARTHA TRAXLER*

| | |
|---|---|
| DATE OF JUDGMENT: | 10/28/96 |
| TRIAL JUDGE: | HON. DONALD B. PATTERSON |
| COURT FROM WHICH APPEALED: | COPIAH COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | F. ANDREW HOWELL |
| ATTORNEY FOR APPELLEE: | OLEN C. BRYANT, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART- 12/31/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/3/99 |

**BEFORE PITTMAN, P.J., ROBERTS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Thomas and Martha Traxler were married on July 31, 1971 in Mississippi. Two children, Casey Anne Traxler and Ty A. Traxler, were born of this marriage. The parties were separated in March of 1995. The oldest child, Casey, was twenty-one years old at the time of trial and is emancipated. Ty is enrolled in college at Copiah Lincoln Community College on a full athletic scholarship which includes an endowment of $1,000.00 per semester over and above standard college costs and expenses.

¶2. The parties jointly purchased a home located at 119 Mathis Road, Crystal Springs, Mississippi seventeen years ago, which at the time of trial had an approximate mortgage balance of $51,709.00 with estimated equity in the amount of $33,290.00. The parties have no interest in any other real property.

¶3. Thomas earns approximately $56,400.00 annually from his employment at the Federal Small Business Administration where he has worked for approximately 18 years. He has an adjusted gross monthly income of approximately $3150.00. At the time of trial, the balance of his retirement account was $46,000.00, which he is eligible to receive upon retirement. He is exempt from Social Security retirement benefits due to

his Civil Service Retirement System employment status.

¶4. Martha earns approximately $34,679.00 per year from her employment as a school counselor at Copiah County Schools. She has an adjusted gross monthly income of approximately $2023.00. At the time of trial, the balance of her retirement account was $19000.00. Martha has contributed into Social Security during her years of employment and will be eligible for benefits upon her retirement. Martha has been continuously employed throughout the marriage.

¶5. The parties have accumulated household furnishings and personal property throughout the twenty-five years of marriage. There is dispute as to the actual value of the household furnishings and some personal property.

¶6. Thomas maintained two whole life insurance policies that were purchased during the marriage with marital assets. There is a Kansas City Life Insurance policy which contained a cash value of $2,049.00, and Lamar Life Insurance policy with a cash value of $3,495.00. However, due to loans, their net cash value was $1,817.00 at the time of trial. In dispute as a marital asset is a $50,000.00 Southern Farm Bureau Life Insurance policy, owned by Thomas, but purchased for the benefit of his mother, Ms. Annette Traxler, for estate purposes during the marriage. The approximate cash value of the policy, $25,000.00, and the ownership was returned to Annette Traxler prior to trial. Thomas and Martha testified that the policy was obtained for estate purposes. There is dispute as to how the premiums of the policy were paid.

¶7. During the marriage, Thomas managed four single family rental units owned by his mother that earned the family extra income. The amount of the income was estimated to be $300.00 per month. After the separation of the parties, Thomas moved to Brandon, Mississippi into a one bedroom apartment. Subsequently, Annette began managing the rental units and retaining any profits.

¶8. Martha Traxler initiated this action by filing a Complaint on July 21, 1995, for Divorce in the Chancery Court of Copiah County, Mississippi pursuant to Miss. Code Ann. Section 93-5-1 (Supp 1997). Martha requested the custody of the minor child, child support and maintenance, title to the marital home, periodic and lump sum alimony, payment of marital debt, and attorney fees. Thomas Traxler filed an Answer and Counter Complaint for Divorce on September 7, 1995 alleging habitual cruelty and inhuman treatment and requesting an equitable division of the marital property and attorney fees, pursuant to Miss. Code Ann. Section 93-5-2 (Supp 1997).

¶9. On July 23, 1996, the question of monthly child support and maintenance as well as the division of marital property and attorney fees were submitted via a signed Consent Agreement pursuant to Miss. Code Ann. Section 93-5-2(3) (Supp 1997).

¶10. After a full hearing in open court and the parties submission of their respective Findings of Fact and Conclusions of Law, the Chancellor made the following ruling:

1) Martha would receive $750.00 in monthly periodic alimony, all equity ($33,000.00) in the marital home and the parties would divide all personal property contained in the house via an auction process unless otherwise agreed. Additionally, Martha would receive title to the home and child support for the remaining un-emancipated child in the amount of $225.00 per month, when the child remained with her for more than any 30 day period. The parties would divide health care cost not covered by insurance and reasonable and necessary college expenses for the child with Thomas paying 61% and Martha 39% of said costs.

2) The Court found both parties to have some ability to pay attorney fees and the total fees were combined and Thomas was ordered to pay 61% and Martha 39% .

3) The Court found the oldest child, Casey Traxler, emancipated due to her age with no future obligation of support but allowed her to obtain possession of the U.S. savings bonds, which were purchased during the marriage, valued at $2000.00. Thomas was ordered to hold the remaining bonds in Ty Traxler's name in trust, in the amount of $11,000.00, for educational purposes.

4) A life insurance policy through Southern Farm Bureau, purchased during the marriage for the benefit of Thomas's mother, Annette Traxler was found not to be a marital asset. A $5000.00 loan from Annette Traxler to Martha and Thomas Traxler was found not to be an enforceable debt in these proceedings.

¶11. Thomas Traxler filed a Motion for Reconsideration on November 12, 1996, and after a hearing on the Motion, the Court denied the relief requested in an order entered November 27, 1996. A Notice of Appeal was filed by the Appellant on December 27, 1996. Appellee thereafter filed a Notice of Cross Appeal on January 9, 1997. Aggrieved by the decision of the lower court, Thomas appeals and raises the following issues:

**I. WHETHER THE LOWER COURT ERRED WHEN IT CONSIDERED ALL RETIREMENT BENEFITS ACCUMULATED BY EACH PARTY AS MARITAL ASSETS, AND THEREFORE SUBJECT TO EQUITABLE DISTRIBUTION.**

**II. WHETHER THE LOWER COURT ERRED WHEN IT ATTEMPTED TO CONSIDER ALL RETIREMENT BENEFITS AS MARITAL ASSETS, BUT FAILED TO CONSIDER MARTHA TRAXLER'S SOCIAL SECURITY FOR PURPOSES OF EQUITABLE DISTRIBUTION.**

**III. WHETHER RENTAL INCOME RECEIVED BY THOMAS TRAXLER DURING THE MARRIAGE BUT DISPENSED WITH PRIOR TO DIVORCE JUDGMENT, SHOULD HAVE BEEN INCLUDED AS A MARITAL ASSET FOR PURPOSE OF EQUITABLE DISTRIBUTION AND AWARDING PERIODIC ALIMONY.**

**IV. WHETHER AN AWARD OF $750.00 PER MONTH PERIODIC ALIMONY AWARD WAS EXCESSIVE.**

**V. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN ORDERING THOMAS TRAXLER TO PAY 61% OF COMBINED ATTORNEY'S FEES WITHOUT PROOF OF HER INABILITY TO PAY.**

¶12. Martha Traxler raises on cross-appeal the following issue:

**I. WHETHER A LIFE INSURANCE POLICY CASH VALUE OWNED BY THOMAS TRAXLER IS A MARITAL ASSET.**

## STANDARD OF REVIEW

¶13. The court's standard of review in domestic relations matters is limited. We will not disturb the findings of a Chancellor unless the Chancellor was manifestly wrong, clearly erroneous, or an erroneous legal

standard was applied. ***Turpin v. Turpin,*** 699 So. 2d 560, 564 (Miss. 1997).

## LEGAL ANALYSIS

**I. WHETHER THE LOWER COURT ERRED WHEN IT CONSIDERED RETIREMENT BENEFITS ACCUMULATED BY EACH PARTY AS MARITAL ASSETS, AND THEREFORE SUBJECT TO EQUITABLE DISTRIBUTION.**

**and**

**II. WHETHER THE LOWER COURT ERRED WHEN IT ATTEMPTED TO CONSIDER ALL RETIREMENT BENEFITS AS MARITAL ASSETS, BUT FAILED TO CONSIDER MARTHA TRAXLER'S SOCIAL SECURITY FOR PURPOSES OF EQUITABLE DISTRIBUTION.**

¶14. Thomas contends that if he is required to rely on his federal retirement without the benefit of social security he will be unable to maintain a decent standard of living under the terms of the divorce judgment which would not be an equitable distribution. Thomas Traxler's retirement benefit is his federal retirement account consisting of a balance of $46,000 at the time of trial. This amount reflects what he has contributed over eighteen years of employment.

¶15. In his brief, Thomas cites ***Savelle v. Savelle,*** 650 So. 2d 476 (Miss. 1995) for the proposition that one spouse has no vested right in the other's pension or retirement benefits.

¶16. Mississippi applies the doctrine of equitable distribution when deciding issues of marital assets. ***Ferguson v. Ferguson,*** 639 So. 2d 921, 927 (Miss. 1994). Marital property is defined as, "any and all property acquired or accumulated during the marriage". Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to equitable distribution by the chancellor. ***Hemsley v. Hemsley,*** 639 So. 2d 909, 915 (Miss. 1994).

¶17. Thomas and Martha were married for 25 years. Thomas has worked for the U.S. Small Business Administration for the last 18 of those 25 years. Thomas' retirement was accumulated during the marriage. Retirement accumulated during the marriage is therefore subject to equitable distribution. ***Rennie v. Rennie,*** No. 97-CA-00100- SCT. July 23, 1998.

¶18. Chancellor Patterson employed the following guidelines set in ***Ferguson,*** 639 So. 2d at 928, to effect an equitable division of marital property:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

> a. Direct or indirect economic contribution to the acquisition of the property;

> b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

> c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and

8. Any other factor which in equity should be considered.

¶19. It should be noted that although the chancellor followed the guidelines and included Thomas' retirement as a marital asset, he adjudicated him to be the owner of his retirement free and clear of Martha.

¶20. Accordingly, the chancellor's decision to include Thomas' retirement as a marital asset and subject it to equitable distribution is affirmed.

¶21. Thomas also contends that the chancellor's failure to consider Martha's Social Security benefits was not an equitable distribution. He argues that since Martha has retirement plus the fact that she is eligible for Social Security benefits then that should have been included with the marital assets. "One objective of equitable distribution of property is a fair division based upon the facts of the case." *Reddell v. Reddell*, 696 So. 2d 287 (Miss. 1997); *Ferguson v. Ferguson,* 639 So. 2d 921, 929 (Miss. 1994). In a determination of the division of marital property, both spouses' contributions during the marriage should be thoroughly evaluated by the chancellor. *Chamblee v. Chamblee*, 637 So. 2d 850, 865 (Miss. 1994 ).

¶22. In response, Appellee argues that Social Security can in no way be considered a "vested" benefit to the extent that it becomes a marital asset.

¶23. Martha has Social Security taken from her monthly income which enables her to be eligible for it upon retirement. She is not receiving the benefits now, nor can it be determined that she will actually receive them in the future. As stated above marital property is "any and all property acquired or accumulated during the marriage". In his judgment, the chancellor listed all assets and debts with a known dollar figure but failed to discuss the Social Security although it is presently being deducted from Martha's wages. Although this is an error, it should be considered harmless because the overall distribution was equitable. The decision of the lower court is affirmed.

**III. WHETHER THE LOWER COURT ERRED WHEN IT MADE A FINDING OF FACT BASED ON SPECULATION THAT THOMAS TRAXLER WOULD RECEIVE SUPPLEMENTAL INCOME IN THE FUTURE AS A BASIS FOR AWARDING PERIODIC**

**ALIMONY AND EQUITABLE DISTRIBUTION.**

¶24. The supplemental income that is in question is the rental income that Thomas collected from managing rental property owned by his mother, Annette Traxler. Beginning in 1972, Thomas took over management and administration of the rental property. During those years, the proceeds were used to supplement the needs of the household. Thomas ceased management of the property after the divorce suit was filed.

¶25. The chancellor, in his decision, stated that the rental income that Annette Traxler was giving to Thomas was a gift and non-marital property, but these funds were deposited in the joint account, thus converting non-marital to marital property. ***Johnson v. Johnson,*** 650 So. 2d 1281, 1286 (Miss. 1994).

¶26. Thomas alleges that it was reversible error for the chancellor to find purely on speculation and conjecture that subsequent to this litigation, the rental income would again be received based on his relationship with his mother.

¶27. Thomas testified that he relinquished management because of his move to Brandon. However, no evidence was offered to show that his mother demanded return of the management responsibilities. The chancellor took into consideration the fact that this was extra money that contributed to the parties standard of living and that it is not beyond belief that the money will be restored to him when this matter is finalized. Although there are no facts to show that he will resume management, there is evidence that he managed it for twenty-two years.

¶28. Thomas further argues that even if the court were to consider this income, Martha did not contribute toward its procurement and she is due no equitable division. ***Watts v. Watts,*** 466 So. 2d 889, 891 (Miss.1985). This argument has no merit in that evidence shows that Martha helped clean, manage and collect the rent over the twenty-two years.

¶29. Assets originally categorized as non-marital assets may be converted to marital assets by being used for family purposes or commingled with marital assets. ***Heigle v. Heigle,*** 654 So. 2d 895, 897 (Miss. 1995). The chancellor had the most fundamental fairness in mind because each party walked away with an even split. The decision to include rental income is affirmed.

**IV. WHETHER THE AWARD OF $750.00 PER MONTH PERIODIC ALIMONY WAS EXCESSIVE CONSIDERING MARTHA RECEIVED TOTAL EQUITY IN THE MARITAL HOME, CHILD SUPPORT AND LIMITED MARITAL LIABILITIES.**

¶30. Whether or not to award alimony and the amount of alimony is largely within the discretion of the chancellor. A decision by the chancellor will not be disturbed unless it is found to be against the overwhelming weight of the evidence or manifestly in error. ***Parsons v. Parsons,*** 678 So. 2d 701, 703 (Miss. 1996); ***Creekmore v. Creekmore***, 651 So. 2d 513, 517 (Miss. 1995 ).

¶31. The following factors are to be considered by the chancellor in arriving at findings and entering judgment for alimony:

> 1. Income and expenses of the parties;

> 2.The health and earning capacity of the parties;

3. The needs of each party;

4. The obligations and assets of each party;

5. The length of the marriage;

6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide child care;

7. The age of the parties;

8. The standard of living of the parties, both during the marriage and at the time of the support determination;

9. The tax consequences of the spousal support order;

10. Fault or misconduct;

11. Wasteful dissipation of assets by either party;

12. Any other factor deemed by the court to be "just and equitable" in connection with setting spousal support.

*Parsons,* 678 So. 2d at 703; *Ethridge v. Ethridge,* 648 So. 2d 1143, 1146 (Miss. 1995); *Armstrong v. Armstrong,* 618 So. 2d 1278, 1280 (Miss. 1993).

¶32. Thomas, at age 47, receives an annual salary of $56,000.00 and monthly gross of $4700.00. He generally receives an annual cost of living increase of one and one half to two percent, which will increase his annual and monthly gross. His disposable income is $3150.00. Thomas' monthly living expenses, per his financial statement, total $1288.00 and his monthly obligations total $1000.00. The monthly obligations were considered to be short term debts. Thomas has $46,000.00 in retirement, $25,000.00 in personal property assets, and a cash value of $1817.00 on two life insurance policies. He is in good health.

¶33. Martha's assets were found to be $46,364.00 which includes her retirement of $19,000.00. The chancellor combined the total of marital assets and came up with a figure of $121,622.00. He then split the assets 50/50.

¶34. Thomas alleges that the award was excessive considering that Martha received total equity in the marital home, will collect child support and has limited marital liabilities. Although she has the equity in the home, she has to assume all of the mortgage payments of $655.00 per month. The chancellor ordered Thomas to pay an amount of $225.00 child support for any thirty day period that the minor child will be in the home. This decision was made considering the fact that Ty Traxler will be entering college and will be away from the home the majority of the school year. Thomas fails in showing that he is left with a majority of the marital liabilities since all assets and joint liabilities were split evenly. The chancellor's decision was supported by credible evidence offered by both parties and is therefore affirmed.

**V. WHETHER THE LOWER COURT ABUSED ITS DISCRETION WHEN ORDERING THOMAS TO PARTIALLY PAY MARTHA'S ATTORNEY'S FEES WITHOUT PROOF OF HER INABILITY TO PAY.**

¶35. "Like other matters, awarding attorney's fees is entrusted to the chancellor's broad discretion." ***Boykin v. Boykin,*** 565 So. 2d 1109, 1116 (Miss. 1990); ***Cheatham v. Cheatham,*** 537 So. 2d 435, 440 (Miss. 1988); ***Holleman v. Holleman***, 527 So. 2d 90, 95 (Miss. 1988).

¶36. Thomas alleges that the chancellor abused his discretion when awarding Martha partial attorney fees without a showing of an inability to pay. Martha demonstrated her inability to pay fees in that she borrowed the money to pay the portion of the fees that had been paid. However it should be noted that the amount he was ordered to pay, $2268.00, was offset by the amount Martha had to pay Thomas to equalize the distribution of marital assets. The chancellor used sound discretion when awarding Martha partial payment of attorney fees and is therefore affirmed.

¶37. On cross-appeal Martha raises the single issue:

## VI. WHETHER A LIFE INSURANCE POLICY OWNED BY THOMAS DURING THE MARRIAGE IS A MARITAL ASSET.

¶38. The Appellee contends that the chancellor incorrectly determined that the $26,500.00 cash value in a life insurance policy was not a marital asset. Martha argues that the premiums were paid out of the joint checking account.

¶39. The life insurance policy was purchased by Annette Traxler for the benefit of Thomas for estate purposes. Annette Traxler testified that the premiums were deposited into Thomas' checking account by her and subsequently paid out of that account. However, no other evidence was provided to show from which account the premiums were paid. The Court finds that this issue is to be remanded to the lower court for a determination as to from which account the premiums were paid.

## CONCLUSION

¶40. This Court affirms all decisions of the lower court in including retirement benefits as a marital asset; including rental income as a marital asset for equitable distribution; the awarding of $750.00 per month periodic alimony; and the awarding of partial attorney's fees. However, the issue of the cash value of the life insurance policy is remanded to determine from which account the premiums were paid.

¶41. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, C.J., PITTMAN, P.J., ROBERTS, MILLS AND WALLER, JJ., CONCUR. McRAE, J.,DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J., AND BANKS, J.**

**McRAE, JUSTICE, DISSENTING:**

¶42. The Court holds that the Chancellor erred by failing to include Martha's Social Security benefits in the equitable distribution hotchpot. But, the Court subsequently and unreasonably deems such error harmless as it affirms the Chancellor's distribution. The Court further errs by stating the Chancellor split the assets 50-50 and by forcing Thomas to pay a portion of Martha's attorney's fees. Hence, I dissent.

¶43. The majority cites *Rennie v. Rennie*, 718 So. 2d 1091, 1095(Miss. 1998), as it states, "[r]etirement accumulated during the marriage is therefore subject to equitable distribution." Yet, despite its temporal wisdom, the majority proceeds to eschew its own statement. Indeed, the majority deems harmless the Chancellor's failure to include Martha's 25 years of Social Security benefits in the equitable distribution equation. The majority maintains such a perspective despite its own plain language and despite this Court's statement in *Reddell v. Reddell*, 696 So. 2d 287, 288 (Miss. 1997) (*citing Chamblee v. Chamblee*, 637 So. 2d 850, 865 (Miss. 1994)): "[o]ur holding in *Chamblee* requires that, in a determination of the division of marital property, both spouses contributions during the marriage be thoroughly evaluated by the chancellor."*See Id.*

¶44. Because federal retirement is in lieu of social security and because federal retirement is being considered, it is my view that social security must also be considered in deciding the issue of equitable distribution in this case.

¶45. The "evident error" is not harmless because equitable distribution is unrealizednot all of the marital assets were considered. Martha's contribution appeared to be less than it was, which proved detrimental to Thomas because it appeared as if Martha commanded more assets and relative "support" than was actually so. Martha benefitted from the error. Despite Martha's claims to the contrary, her Social Security investment from years as a school counselor is vested, because she has paid in a sum of funds from which benefit amounts are calculable. Hence, the Social Security funds are distributable assets which the Chancellor erroneously failed to consider. Further, the Court says the Chancellor "split the assets 50/50." Yet, how can such be so since the Social Security funds were not considered? It cannot.

¶46. As to the assignment of attorney's fees, Thomas was forced to pay a percentage of Martha's fees despite the fact Martha failed to show an inability to pay. While the Court finds that Martha demonstrated an inability to pay in that she borrowed funds to pay that which she did, the Court is conclusory because such evidence is far from determinative of an overall inability to pay. Perhaps Martha simply did not have sufficient cash flow at the time as she awaited her next pay check, or perhaps Martha had the funds but borrowed because she preferred not to reduce her current level of such funds. The point is clearhow are we to know from a simple act of borrowing that Martha was unable to pay the whole of her attorney's fees? We are not so able.

¶47. The Court continues its justification of the Chancellor's decision by stating that Martha offset Thomas's payment of attorney's fees with her payment to equalize the distribution of marital assets. Yet, such is a non-justification because Martha was required to pay the distribution equalization regardless of whether she had attorney's fees. By allowing Martha to only pay the full amount of the equalization while reducing her obligation for her attorney's fees, Thomas again is harmed while Martha benefits. Yet, the Court certifies the Chancellor's action. Given insufficient showing from which to rationally deem Martha unable to pay her attorney's fees, reason and equity dictate that each party should pay that party's own attorney's fees. *See Cheatham v. Cheatham*, 537 So. 2d 435 (Miss. 1988).

¶48. As aforementioned, the majority manifestly errs in not reversing to include Martha's vested Social Security benefits, in declaring the Chancellor's split of assets to have been equal, and in not reversing to have each party pay its own attorney's fee. Accordingly, I dissent.

**SULLIVAN, P.J., AND BANKS, J., JOIN THIS OPINION.**