## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01795-SCT

*LEALVE FISHER*

*v.*

*EARNEST J. FISHER*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/07/1998 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JESSIE L. EVANS |
| ATTORNEY FOR APPELLEE: | SHARON PATTERSON THIBODEAUX |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REMANDED - 11/16/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 12/7/2000 |

## CONSOLIDATED WITH

## NO. 97-CA-00837-SCT

*LEALVE FISHER*

*v.*

*EARNEST J. FISHER*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/31/1997 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JESSIE L. EVANS |
| ATTORNEY FOR APPELLEE: | SHARON PATTERSON THIBODEAUX |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REMANDED - 11/16/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Earnest J. Fisher filed for a divorce, temporary restraining order and other temporary relief from her husband of 29 years, Lealve Fisher. Mrs. Fisher alleged as her grounds for divorce habitual cruel and inhuman treatment, adultery, and irreconcilable differences. Temporary relief was granted to Mrs. Fisher, and Mr. Fisher counterclaimed for divorce. The chancellor granted Mrs. Fisher a divorce on the ground of habitual cruel and inhuman treatment due to the physical abuse by Mr. Fisher and his extramarital affairs throughout the course of the marriage. Mr. Fisher filed a motion to clarify the judgment of divorce, which Mrs. Fisher answered counterclaiming for contempt for his failure to pay sums then due under the judgment. A postponement of a hearing on the motion was allowed in order to give the parties an opportunity to obtain certain information for the chancellor. Mr. Fisher filed a notice of appeal, and Mrs. Fisher filed a motion to dismiss because the trial court had not ruled on all of the issues. This Court granted the motion and dismissed the appeal without prejudice. Following a hearing on Mr. Fisher's motion to clarify, the trial court denied that motion. A notice of appeal to this Court from the final judgment was timely filed, assigning as error the following three issues:

**I. THE CHANCELLOR ERRED IN GRANTING A DIVORCE TO APPELLEE ON THE GROUND OF HABITUAL CRUEL AND INHUMAN TREATMENT.**

**II. THE CHANCELLOR COMMITTED MANIFEST ERROR IN AWARDING ONE HALF OF APPELLANT'S RAILROAD RETIREMENT TO APPELLEE, IN REQUIRING APPELLANT TO PAY THE SUM OF TWO HUNDRED DOLLARS PER MONTH AS A UTILITY ALLOWANCE, AND IN THE GENERAL DISTRIBUTION OF THE ASSETS ACCUMULATED DURING THE MARRIAGE OF THE PARTIES.**

**III. THE CHANCELLOR COMMITTED REVERSIBLE ERROR IN AWARDING USE AND POSSESSION OF THE PARTIES' MARITAL DOMICILE TO APPELLEE UNCONDITIONALLY AND BY FURTHER REQUIRING APPELLANT TO PAY THE MONTHLY HOUSE NOTE ON SAID DOMICILE WITHOUT GIVING APPELLANT ANY INCREASE IN HIS EQUITY IN SAID DOMICILE.**

¶2. We remand to the trial court for the limited purpose of having the chancellor make the required record of the findings of fact and conclusions of law regarding the distribution of the marital estate.

## STATEMENT OF THE FACTS

¶3. Earnest and Lealve Fisher were married on July 5, 1968, and had three children, two of whom were still living, grown and married at the time of the divorce. Mr. Fisher had worked for Illinois Central Railroad for 16 years during the marriage, and he had been laid off about 6 years from that job. He worked a short period of time for J.B. Hunt and 5 years for Southern Drayage as a truck driver, and in 1996, he began driving a truck for Jitney Jungle.

¶4. Mrs. Fisher had been employed as a crossing guard with the Jackson Police Department for 15 years and also at Jackson Academy for 1 ½ years. She had worked at various other jobs providing services such as baby sitting, personal care needs of a family member, cleaning, flower arranging and assisting with weddings at her church.

¶5. The parties bought a home in 1971 and resided in this domicile together until their final separation in August 1996. Five years before their final separation the parties had been sleeping in separate bedrooms. Mrs. Fisher alleged that her husband would stay out late at night, and when she tried to refuse him entry into the home he would shove her out of the way. Mr. Fisher began sleeping on the couch and moved to a spare bedroom when one of the daughters moved out. Both parties had locks on their bedrooms, and Mr. Fisher had even put a refrigerator in his room. One night after he came in late, and Mrs. Fisher was questioning him about where he had been, she picked up a screwdriver and demanded that he tell her who he had been with. She testified that he grabbed her, hit her "up side" the head and that after she fell to the floor he kicked her. Mr. Fisher alleged that he hit his wife in self-defense. Mrs. Fisher also testified that she had seen the defendant with other women on several occasions, but Mr. Fisher denied the allegations of adultery.

¶6. After hearing the testimony of all parties, and having weighed the credibility of the witnesses before the court, the chancellor found that Mr. Fisher had committed adultery, and had been habitually cruel and inhuman in his treatment of his wife. Accordingly, the chancellor awarded the divorce on the ground of:

> habitual cruel and inhuman treatment, finding that the habitual treatment shall also include the manner and the relationships which Mr. Fisher had with the three other witnesses, . . . that - - again, the Court finds that there is sufficient grounds for uncondoned adultery, but can only award a divorce on one particular ground, and the ground is habitual cruel and inhuman treatment, with the Court having considered the treatment of the extramarital affairs and the adulterous relationship that Mr. Fisher has convinced this Court that he has had throughout the course of the marriage and specifically since the filing of the second divorce. And for those reasons, the Court will grant Mrs. Earnest Fisher a divorce on the grounds of habitual cruel and inhuman treatment.

¶7. The chancellor, without making the requisite findings of fact and conclusions of law, awarded Mrs. Fisher the use and possession of the marital domicile as well as one-half of Mr. Fisher's pension from Illinois Central Railroad. Mrs. Fisher was also awarded the use and possession of the household furnishings excluding the bedroom set and Mr. Fisher's personal items. Further, Mr. Fisher was ordered to pay the mortgage on the home, a $200.00 per month allowance for all utilities associated with the home, and $1,500.00 in partial attorney fees. He was not required to provide health insurance coverage, and he was not divested of title to his undivided one-half interest in the marital domicile.

## STANDARD OF REVIEW

¶8. This Court will not reverse a chancellor's decree of divorce unless it is manifestly wrong as to law or fact. The chancellor, as the trier of fact, evaluates the sufficiency of the proof based on the credibility of witnesses and the weight of their testimony. This Court views the facts of a divorce decree in a light most favorable to the appellee and may not disturb the chancery decision unless this Court finds it manifestly wrong or unsupported by substantial evidence. *Richard v. Richard*, 711 So.2d 884, 888 (Miss. 1998) (citing *Rawson v. Buta,* 609 So.2d 426, 429 (Miss. 1992)).

## DISCUSSION

### I. THE CHANCELLOR ERRED IN GRANTING A DIVORCE TO APPELLEE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT.

¶9. "The ground of habitual cruel and inhuman treatment may be established by a preponderance of the

evidence, rather than clear and convincing evidence, and the charge 'means something more than unkindness or rudeness or mere incompatibility or want of affection.'" *Id*. at 888 (citing *Daigle v. Daigle,* 626 So.2d 140, 144 (Miss. 1993)). "Evidence sufficient to establish habitual, cruel and inhuman treatment should prove conduct that: either endanger[s] life, limb or health, or create[s] a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief or, in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending[ed] spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance."*Id*.

¶10. Justice requires that the chancellor's primary inquiry must be into the ground for divorce with a dual focus upon 1) the conduct of the offending spouse and 2) the impact of that conduct upon the plaintiff.*Id.* at 890. The requirement of physical violence or threats of such for a claim of cruel and inhuman treatment to lie apply only when those are the acts alleged in the complaint. *Id.* at 889. This Court no longer requires that a specific act must be the proximate cause of a separation before a divorce may be granted on grounds of habitual cruel and inhuman treatment. It is, instead, habitual or continuous behavior over a period of time, close in proximity to the separation, or continuing after a separation occurs, that may satisfy the grounds for divorce.*Id*. at 890.

¶11. Mr. Fisher contends that his wife did not present sufficient testimony and evidence to show that she was entitled to a divorce on the ground of habitual cruel and inhuman treatment, relying on *[Potts v. Potts](#)*, 700 So.2d 321, 322 (Miss. 1997). However, *[Potts](#)* is distinguishable on its facts, with the only similarity being that Mr. Potts did sleep in a separate bedroom and would return when he wanted to have sexual relations with his wife. There was no evidence that Mr. Potts was seeing other women, which appears to be the primary basis for the chancellor's decision in the case *sub judice*, nor that Mr. Potts ever hit Mrs. Potts. In the present case, testimony revealed that Mr. Fisher had indeed hit his wife, and shoved her on numerous occasions even though he alleged that he hit her in self-defense, and that he had been seeing other women on a regular basis for quite some time.

¶12. This Court finds that Mrs. Fisher's allegations that she can no longer live with her spouse on account of his conduct are justified. Testimony revealed that Mr. Fisher often came home late and when Mrs. Fisher would stand in the doorway to block his entry into the home, he would push her out of the way. Their daughters testified that they had witnessed their father strike their mother and push and shove her out of the way on numerous occasions. On cross-examination as to whether her father ever pushed her mother down on the floor, in response to counsel's question "He never pushed her down on the floor or anything, did he? He just pushed her aside; isn't that correct?", one of the daughters stated: "No, they have fought; they have fought."

¶13. The chancellor also found credible evidence convincing her that uncondoned adultery had occurred and stated for the record that the divorce was being awarded on the ground of habitual cruel and inhuman treatment which would also include the manner and the relationships which the defendant had throughout the course of the marriage. Mr. Fisher's conduct was habitual and/or continuous behavior over a period of time, sufficient to satisfy the requirements for divorce on the ground of habitual cruel and inhuman treatment. Thus, the chancellor was not in error. This issue is without merit.

### II. THE CHANCELLOR COMMITTED MANIFEST ERROR IN AWARDING ONE HALF OF APPELLANT'S RAILROAD RETIREMENT TO APPELLEE, IN REQUIRING

**APPELLANT TO PAY THE SUM OF TWO HUNDRED DOLLARS PER MONTH AS A UTILITY ALLOWANCE, AND IN THE GENERAL DISTRIBUTION OF THE ASSETS ACCUMULATED DURING THE MARRIAGE OF THE PARTIES.**

¶14. "Mississippi applies the doctrine of equitable distribution when deciding issues of marital assets." *Traxler v. Traxler*, 730 So.2d 1098, 1101-03 (Miss. 1998). "Marital property is defined as, 'any and all property acquired or accumulated during the marriage'." *Id*. Assets so acquired or accumulated during the course of the marriage are marital assets and are subject to equitable distribution by the chancellor governed by the guidelines delineated in *Johnson v. Johnson*, 650 So.2d 1281 (Miss. 1994), *Ferguson v. Ferguson*, 639 So.2d 921 (Miss. 1994), and *Hemsley v. Hemsley*, 639 So.2d 909 (Miss. 1994). In *Knutson v. Knutson*, 704 So.2d 1331, 1332 (Miss. 1997), this Court stated:

> The first step is to identify the character of the parties' assets, both marital and nonmarital, pursuant to Hemsley. *Johnson*, 650 So.2d at 1287. The chancellor should then, in light of each party's nonmarital property, employ the Ferguson factors as guidelines and equitably divide the property. *Id*. The Court instructed the chancellor to do no more "[i]f there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties...." *Id*. However, "[i]f the situation is such that an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered." *Id*.

¶15. In the present case, the chancellor stated: "In regard to the division of the marital assets, the court has reviewed and considered the issues in *Ferguson v. Ferguson* and will not outline those issues item by item, but will find as a specific finding of fact that it has considered that in rendering its decision in the division of the marital assets." She then proceeded to distribute the assets.

¶16. Although the chancellor was correct in applying the *Ferguson* factors to effect the equitable division of the Fishers' marital property, she did not make specific findings of fact and conclusions of law in support of her division of the assets, as this Court has required in *Ferguson,* 639 So. 2d at 929, *Sandlin v. Sandlin*, 699 So. 2d 1198, 1203-04 (Miss. 1997), *Kilpatrick v. Kilpatrick*, 732 So. 2d 876, 880 & 882 (Miss. 1999), and *Heigle v. Heigle*, No.1999-CA-00007-SCT, 2000 WL 1642426, at *5-6 (Miss. Nov. 2, 2000). As a result, this Court has no choice but to remand this action so that the trial court may complete its task and make the requisite findings of fact and conclusions of law. In so doing, the chancellor should, inter alia, identify the "utility allowance" in the context of alimony, consistent with prior cases of this Court.

## Attorney's Fees

¶17. In his summary of his argument, Mr. Fisher stated that the chancellor erred in requiring him to pay $1,500 of his wife's attorney's fees, yet this point was not addressed in his statement of the issues. Nevertheless, we choose to address it.

¶18. "The decision as to whether to award attorney's fees in a divorce case is within the sound discretion of the chancellor." *Grogan v. Grogan*, 641 So.2d 734, 744 (Miss. 1994). "This Court will not overturn a chancellor's decision regarding attorney's fees unless the chancellor was manifestly in error." *Id*. "Ordinarily an award of attorney's fees should not be made unless the party requesting such fees can establish the inability to pay the fees." *Id*.

¶19. Mrs. Fisher testified that she owed $3,086.50 in attorney's fees, having paid $1,000 on the initial retainer and some court costs. She further testified that she paid this by obtaining a loan, shown on her financial disclosure statement, and had no means to pay the unpaid balance. The chancellor was presented ample evidence of Mrs. Fisher's inability to pay the fees, and this award of attorney's fees was an not abuse of the chancellor's discretion. She also accommodated Mr. Fisher's request and ordered that the $1,500 be paid in monthly installments of $100. We find no abuse of discretion with regard to the award of attorney's fees.

## CONCLUSION

¶20. We remand this case to the Hinds County Chancery Court, First Judicial District, so that the chancellor may make the requisite specific findings of fact and conclusions of law regarding the distribution of the marital assets.

¶21. **REMANDED.**

> **PRATHER, C.J., PITTMAN AND BANKS, P.JJ., SMITH, MILLS, WALLER AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**