RUSSELL, J.,
dissenting:
¶ 17. The majority affirms the chancellor’s decision to award Gloria a portion of Stephen’s social security benefits after finding the settlement agreement ambiguous and determining that “this income” included Stephen’s retirement pension plan plus his social security benefits. I disagree; therefore, I respectfully dissent. Social security benefits are not a marital asset; therefore, they are not subject to equitable division in a divorce based on the doctrine of federal preemption. I find that Gloria is entitled to one-half of Stephen’s *1227 retirement income from Martin Marietta, but she is not entitled to any portion of Stephen’s social security income. As such, I would reverse the chancellor’s judgment and remand for proceedings consistent with the same.
¶ 18. Our standard of review regarding property division and distribution in a divorce proceeding is limited. Jenkins v. Jenkins, 67 So.3d 5, 8 (¶ 8) (Miss.Ct.App.2011). “A chancellor’s division and distribution will be upheld if it is supported by substantial evidence.” Id. (quoting Oswalt v. Oswalt, 981 So.2d 993, 996 (¶ 11) (Miss.Ct.App.2007)). “However, this Court will not hesitate to reverse if it finds the chancellor’s decision is manifestly wrong, or that the court applied an erroneous legal standard.” Id. at 8-9 (¶ 8).
¶ 19. The relevant provision under the federal law is 42 U.S.C. § 407(a) (2006):
The right of any person to any future payments under this subchapter shall not be transferable or assignable, at law • or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
This statute prohibits any transfer of assignment of social security benefits. Id. The United States Supreme Court has noted that this section “imposes a broad bar against the use of any legal process to reach all social security benefits.” Philpott v. Essex County Welfare Bd., 409 U.S. 413, 417, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973). Further, the Supreme Court, relying on this section, has held that the right to receive social security is not a property right. See Flemming v. Nestor, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). T0he Supreme Court reasoned that “[t]o engraft upon the Social Security system a concept of ‘accrued property rights’ would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands.” Id. at 610, 80 S.Ct. 1367. Although, the Supreme Court has never directly considered whether federal law prevents state courts from treating social security benefits as marital property, it has held that other federal benefits with similar anti-assignment provisions cannot be treated as marital property. See Mansell v. Mansell, 490 U.S. 581, 604, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) (military disability benefits); Hisquierdo v. Hisquierdo, 439 U.S. 572, 587, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979) (railroad retirement benefits).
¶ 20. Only two Mississippi cases have touched on the subject of social security benefits incident to a divorce. In Traxler v. Traxler, 730 So.2d 1098, 1102-03 (¶ 23) (Miss.1998), our supreme court held that a chancellor’s failure to discuss a wife’s social security benefits in equitably dividing the parties’ property was error, but such error was harmless because “the overall distribution was equitable.” In Murphy v. Murphy, 797 So.2d 325, 330 (¶ 23) (Miss.Ct.App.2001), a husband contributed to his federal civil service retirement account pri- or to and during the marriage, and such contributions were mandatory, taking the place of social security. The chancellor awarded a portion of the husband’s account to the wife. Id. This Court noted that “the chancellor considered the amount that [the husband’s] retirement increased during the marriage to be a marital asset[,]” and we held that “this was necessary under Traxler.” Id. at 331 (¶ 25). This Court also held that the chancellor’s classification of the wife’s future eligibility for social security benefits'as marital property was proper under Traxler. Id. Brett R. Turner made the following observation regarding these cases:
[I]n Traxler v. Traxler, 730 So.2d 1098 (Miss.1998), the court held that the failure to consider social security benefits *1228 was harmless error. It is hard to determine whether the court meant to hold that the benefits were divisible, or that they were simply a factor in dividing other assets. The court clearly likewise permitted division in Murphy v. Murphy, 797 So.2d 325 (Miss.Ct.App.2001), relying on Traxler, but did not actually divide any value because there was no evidence of value. Neither Traxler [nor] Murphy discussed federal preemption at all.
Brett R. Turner, Equitable Distribution of Property § 6.06 (2d ed. Supp.2002). Additionally, Professor Deborah H. Bell noted: “[F]ederal law provides that [sjocial [security benefits are not divisible marital property!,]” although some jurisdictions “consider [s]ocial [s]ecurity benefits in the division stage as a separate asset available to the owning spouse.” Deborah H. Bell, Bell on Mississippi Family Law § 7.10 (2005).
¶ 21. In 1975, Congress carved out an exception to provide that social security benefits may be withheld to “enforce the legal obligation of the individual to provide child support or alimony.” 42 U.S.C. § 659(a) (2006). However, in 1977, Congress clarified the term “alimony” to ensure that it did not include “any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses.” 42 U.S.C. § 659(i)(3)(B)(ii). Thus, Congress explicitly made a provision excluding property division from the reach of the Social Security Act. Id. Congress’s actions in enacting this statutory provision is indicative of Congress’s intention to keep social security beyond state control.
¶ 22. In this case, the property-settlement agreement, filed contemporaneously with the complaint for divorce on August 12,1992, provided:
10. The parties both agree and understand that the Husband will retire from Martin Marietta Manned Space Systems effective April 24, 1992. He will receive severance compensation equal to his present salary through July 31, 1992. The parties have agreed to accept # D-Level Income as the monthly benefit option. This plan will provide the Husband a monthly income of approximately $3,248.33 before taxes. The Husband will pay the Wife one-half of approximately $3,248.33 minus federal and state taxes. The deductions for taxes will be based at the rate of “Married,” with 2 deductions.” The net amount of these monthly payments will be approximately $1,440.00. The first payment will be due August 1, 1992[,] and the first of each month thereafter. The payments will be terminated only by the death of either the Husband or Wife. Both parties intend that the duration of payments will not be effected by the remarriage of either spouse. The parties agree that these terms are irrevocable and may not be modified by a Court of law in the future.
¶ 23. A document entitled “Petition to Amendment to Joint Complaint for Divorce” was filed on January 7, 1993, and stated the following:
10. The parties both agree and understand that the Husband will retire from Martin Marietta Manned Space Systems effective April 24, 1992. He will receive severance compensation equal to his present salary through July 31, 1992. The parties have agreed to accept # D-Level Income as the monthly benefit option. This plan will provide the Husband a monthly income of approximately $3,189.26. The Husband will remit to the Wife one-half of this income, being *1229 the approximate amount of $1,594.63, on the first day of each month to the wife commencing on January 1, 1993. These monies will be considered alimony!,] and the wife will be responsible for her [flederal and [s]tate tax liability. The husband can then claim as a tax deduction these alimony payments. The payments will be terminated only by the death of either the Husband or Wife. Both parties intend that the duration of payments will not be effected [sic] by the remarriage of either spouse. The parties agree that these terms are irrevocable and may not be modified by a Court of law in the future.
(Emphasis added). Both parties , agree that the D-Level Income retirement option was chosen because it provided the greatest amount of income earlier in Stephen’s retirement, although the chancellor determined that D-Level Income means that the income would be the same amount. Reviewing the retirement application and the plan, they clearly show the amount of retirement income to be received by Stephen prior to age 62 and after age 62. There is absolutely nothing in the Martin Marietta documents or elsewhere in the record to show that Stephen’s social security benefits will be used to make up the difference between “one-half of this income” and the reduced amount received by Stephen at age 62. The record is devoid of any such evidence to support this determination. As a matter of fact, there is nothing in Stephen’s retirement documents that would require him to begin receiving social security benefits at age 62. Additionally, neither the document filed on January 7, 1993, nor the property-settlement agreement filed on August 12, 1992, made any mention that Stephen’s social security benefits would make up the difference in the “one-half of this income” provision. The record is devoid of any such contractual agreement between the parties to included Stephen’s social security benefits. The determination by the chancellor that such an agreement existed is further abuse of discretion. The South Carolina Court of Appeals provides some instruction that is of value in this case. Even if such a contractual agreement existed and the parties proceeded under a mutual mistake, I find that any contract which included Stephen’s social security benefits as part of the property distribution would be in violation of federal law and, therefore, unenforceable as to such a provision. See Simmons v. Simmons, 370 S.C. 109, 634 S.E.2d 1, 5 (S.C.Ct.App.2006) (“The fact that [h]us-band voluntarily agreed to pay [w]ife part of his [s]ocial [security benefits is of no significance” and is unenforceable, although voluntarily entered.). See also In re Marriage of Anderson, 252 P.3d 490, 494 (Co.Ct.App.2010) (quoting Ellender v. Schweiker, 575 F.Supp. 590, 599 (S.D.N.Y.1983)) (“[T]he fact that the parties’ agreement was entered into voluntarily is immaterial” because “Congress’[s] clear and stringent interpretation of the prohibition on transfer and assignment of benefits ... compels us to strictly interpret that clause to prohibit voluntary as well as involuntary transfers or assignments.”).
¶ 24. The divorce decree was entered on January 22, 1993, and states: “the jointly-owned property of Joint Complainants has been settled between the parties and has been agr.eed upon in writing, a copy of which is filed herein in this cause[.]” The record does not reflect any action regarding the “Petition to Amendment to Joint Complaint for Divorce” beyond it being filed, so it is unclear whether this document is the property settlement referred to in the parties’ divorce decree. The chancellor took the position that the property agreement incorporated with the divorce decree was the document entitled “Petition to Amendment to Joint Complaint for Divorce.”
*1230 ¶ 25. The order signed by the chancellor on May 5, 2009, nunc pro tunc to February 12, 2009, and entered on May 7, 2009, provided: “Even though they modified the agreement before the divorce, it appears this is a settlement of marital assets and not alimony, but the [c]ourt has not been asked to make this determination and declines to do so now.”
¶ 26. The transcript reflects the chancellor’s comments regarding the payments:
I think for all of those reasons, that is a compelling argument that it was the intention of the partied that it do include the [sjocial [sjecurity [income] at such time that the level from Martin Marietta changed to diminish to be consistent with his increase that comes from his receipt of [sjocial [sjecurity [income].
The “Petition” appeared to be an attempt to place the division of Stephen’s social security income under the “alimony” exemption found in 42 U.S.C. § 659 for tax purposes; however, when the chancellor properly identified the division as one of property distribution and not alimony, he should have found that it violated federal law. Instead, the issue was only addressed with a passing comment. The payment in this case is clearly a part of the couple’s property division — not an alimony award. Therefore, this is an impermissible attempt to divide federal social security benefits and thwart federal law. As such, Stephen’s social security income is beyond the reach of the chancery court. Stephen’s social security income must remain his under the circumstances of this case.
¶ 27. While no Mississippi case was found which addresses the ability of parties in the divorce to contractually divide social security benefits, Gentry v. Gentry, 327 Ark. 266, 938 S.W.2d 231 (1997) and Boulter v. Boulter, 113 Nev. 74, 930 P.2d 112 (1997) found that federal law does not allow state courts to enforce such contractual agreements. Further, the doctrine of federal preemption, and the effect of these restraints, were summarized in In re Marriage of Crook, 211 Ill.2d 437, 286 Ill.Dec. 141, 813 N.E.2d 198, 206 (2004) as follows:
In drafting the Social Security Act, it is evident that Congress intended to preempt state law property division schemes as applied to [sjocial [sjecurity ' benefits upon divorce. As stated, in section 402 of the Act, Congress has carefully and deliberately limited a divorced spouse’s ability to reach the expected benefits of the other spouse. 42 U.S.C. § 402(b)(1) (2000). By operation of section 402, a divorced spouse may not look to state marital property law for distribution of [sjocial [sjecurity benefits. The provisions set forth in section 402, together with the anti-assignment provisions contained in sections 407 (42 U.S.C. § 407(a) (2000)) and 659 (42 U.S.C. § 659(a) (2000)) of the Act, reflect the intent of Congress to maintain the federal character of the Social Security system and preempt state interference.
¶ 28. The federal scheme under the Social Security Act provides for payments to a qualified divorced spouse. In the case before us, Gloria is entitled to receive social security payments based on her individual contributions or those of her ex-husband, whichever is greater. Currently, in addition to the payments received from Stephen, Gloria collects $660.40 in social security benefits. The fact that Congress has made a statutory provision for a divorced spouse in the Social Security Act indicates that Congress intended to keep social security income beyond state control. Interference is forbidden by the Supremacy Clause in the United States Constitution, Article VI, Clause 2: “This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the *1231 United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.” Congress has had the opportunity to modify section 3401 numerous times but has declined to do so.
¶ 29. Further, “relevant state decisions hold almost uniformly that federal law prevents division of [social security] benefits.” Turner, Equitable Distribution of Property § 6.06 (2d ed. 1994). For example, in Mann v. Mann, 778 P.2d 590, 591 (Alaska 1989), the Supreme Court of Alaska considered “whether [s]tate [supplemental [e]mployee [b]enefits [were] marital property subject to division at the time of the divorce.” The court concluded such state benefits were subject to division, but social security benefits were not, stating:
Unlike social security benefits, the division of state SBS benefits does not involve an infringement on federal law. The SBS system is created and governed by state law and regulations. SBS is a substitute for social security. Unlike social security, an employee has an absolute contractual right to receive SBS benefits.
Id. at 591-92. (internal citations omitted). The court further noted:
Under the doctrine of federal preemption, when a state law and federal law conflict, state law must yield.... In Hillerman v. Hillerman, 109 Cal.App.3d 334, 167 Cal.Rptr. 240 (1980), the California Court of Appeal concluded that there was a substantial conflict between California community property laws and the social security family benefit plan. The court reasoned that under the doctrine of federal preemption, it could not order the invasion of an employee spouse’s social security benefits on divorce. 167 CaLRptr. at 244-46.
Mann, 778 P.2d at 591. Thus, the court held: “[T]he doctrine of federal preemption prevents state courts from dividing social security benefits.” Id.
¶ 30. Similarly, in Gross v. Gross, 8 S.W.3d 56, 58 (Ky.Ct.App.1999), the Kentucky Court of Appeals held that “a trial court’s consideration of non-prospective [s]ocial [s]ecurity benefits in formulating a division of marital property is not preempted by federal law-although the actual benefits themselves are not subject to division or set-off.” In Neville v. Neville, 99 Ohio St.3d 275, 791 N.E.2d 434, 437 (2003), the Ohio Supreme Court held: that “Although a party’s [s]ocial [sjecurity benefits cannot be divided as a marital asset, those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution.” Other states have held that social security benefits may not be considered as a factor in the context of equitable distribution. See In re Marriage of Swan, 301 Or. 167, 720 P.2d 747, 752 (1986) (holding that “the value of social security benefits of either spouse may not be considered in the division of property.”). What these ease do have in common, though, is the fact that the social security benefits themselves may not be divided in the context of property division.
¶ 31. In sum, the doctrine of federal preemption prohibits the chancery court from dividing a party’s social security benefits. While some jurisdiction hold that a court may consider social security income as separate property of a spouse — or as a factor — in equitably dividing property, other jurisdictions hold the opposite. But the law is clear across the states that a court is prohibited from dividing the social security benefit itself. And, the Supreme Court has held that social security benefits are not a property right. The majority is correct that the “Petition to Amendment *1232 to [sic] Joint Complaint for Divorce” explicitly termed Stephen’s payments to Gloria as alimony; however, the chancellor determined that the payments were part of the division of property and refused to rule on the issue. Stephen’s social security benefits were not an asset of the marriage, were not subject to division, and cannot be recognized by any alternative provision employing a setoff; and to do so otherwise would be contrary to current prevailing law. For the above reasons, I find the chancellor abused his discretion and applied incorrect law. Therefore, I would reverse the judgment and remand the case to the chancery court to redetermine an equitable division of the parties’ assets without including Stephen’s social security benefits.