# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 97-CA-00764-SCT

*DAVID PAUL LABELLA*

*v.*

*CLETA JEAN LABELLA*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/03/97 |
| TRIAL JUDGE: | HON. PERCY LEE LYNCHARD, JR. |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | THOMAS L. KESLER |
| ATTORNEY FOR APPELLEE: | CYNTHIA ETHERIDGE DANIELS |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED 9/24/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/15/98 |

**BEFORE SULLIVAN, P.J., BANKS AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

### SUMMARY

¶1. Cleta Jean Labella filed a complaint for divorce against David Paul Labella alleging as grounds for divorce habitual cruel and inhuman treatment pursuant to Miss. Code Ann. § 93-5-1 (1994). The Honorable Percy L. Lynchard, Jr., sitting as Special Chancellor,[1] granted the Appellee's divorce on the grounds of habitual cruel and inhuman treatment. Appellant timely appealed to this Court and assigns the following as error:

> **I. WHETHER THE LOWER COURT ERRED IN GRANTING APPELLEE A DIVORCE ON GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?**
>
> **II. WHETHER THE LOWER COURT ERRED IN ITS PROPERTY DIVISION AND DEBT ASSIGNMENTS?**
>
> **III. WHETHER THE LOWER COURT ERRED IN AWARDING ATTORNEY FEES?**

### STATEMENT OF THE FACTS

¶2. David Paul Labella ("David") and Cleta Jean Labella ("Jean") were married on June 11, 1983.

Three children were born to the marriage. At the time of trial, the children were ages 12, 11, and 6. David and Jean ceased to cohabit as husband and wife in November, 1996, though they continued to reside in the same house. At trial, Jean presented the testimony of three witnesses, including her own, and David testified as the only defense witness.

¶3. Jean testified to at least ten (10) separate episodes of physical abuse starting as early as 1984, including being kicked out of bed when she was pregnant; being thrown to the floor resulting in a jaw injury; bruises when her arm was slammed in a refrigerator; bruises from being slapped in the buttocks; being pushed into a barstool; and being hit 3-4 times while she was attempting to pick up her children from visitation with David while they were separated. Jean testified to other lesser incidents including cursing, name calling, verbal abuse and threats, and on one occasion having her car door kicked in by David. David acknowledges that some of these encounters occurred, but denied any of the injuries. He countered that he suffered injuries from being struck in the legs with a broom and slapped across the face with a newspaper.

### I. WHETHER THE LOWER COURT ERRED IN GRANTING APPELLEE A DIVORCE ON GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT?

¶**4.** The scope of review by this Court in domestic relations appeals is limited by the substantial evidence/manifest error rule. *Magee v. Magee*, 661 So.2d 1117, 1122 (Miss. 1995). "'This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.'" *Id.* (quoting *Bell v. Parker*, 563 So.2d 594, 596-97 (Miss. 1990)). Additionally, this Court views the facts in a light most favorable to the appellee, Ms. Labella. *See Rawson v. Buta*, 609 So.2d 426, 429 (Miss. 1992). This Court will take her testimony and evidence at its best. *Jones v. Jones*, 532 So.2d 574, 578 (Miss. 1988).

¶5. The issue before this Court is whether there was sufficient evidence for the chancellor to grant Jean a divorce on the grounds of cruel and inhuman treatment. In order to justify divorce on grounds of habitual cruel and inhuman treatment, the treatment must be so continuous and of such nature that the offended spouse can no longer live with the other spouse on account of that treatment and, therefore, separates herself from that spouse. *Gallaspy v. Gallaspy*, 459 So.2d 283, 285 (Miss. 1984). It is apparent that Jean cannot live with David any longer, primarily because of the repeated instances of physical abuse. The chancellor found that the parties lived in a continued state of marital conflict and that numerous physical confrontations occurred between David and Jean. The conduct of David appeared from the record to be "so unnatural and infamous as to make the marriage revolting to the non-offending spouse and render it impossible for that spouse to discharge the duties of marriage, thus destroying the basis for its continuance." *See Hassett v. Hassett, 690 So.2d 1140, 1146 (Miss. 1997).*

¶6. This divorce boils down to Jean's word against David's word. Jean did provide corroboration of physical abuse through photographs and the testimony of her father, Jacob Pongetti. There is sufficient evidence in the record for this Court to affirm the chancellor as to this issue.

### II. WHETHER THE LOWER COURT ERRED IN ITS PROPERTY DIVISION AND DEBT ASSIGNMENTS?

¶7. David argues that the chancellor's order of property division and debt assignment is in error

because the chancellor failed to consider David's right to lead a normal life with a decent standard of living. *See McEachern v. McEachern*, 605 So.2d 809, 813 (Miss. 1992).

¶8. David's adjusted gross income is $2,050 per monthly. From this amount, David was ordered to pay: 1) $450 per month child support; 2) $750, which represents the second mortgage on the marital homestead; and, 3) approximately $50 per month to Columbus Light & Water. Additionally, David was ordered to obtain a life insurance policy on himself of at least $100,000 with the couple's three children as the beneficiaries. David must also provide major medical insurance for the three minor children and is responsible for expenses not covered by the insurance. David argues that the property division and debt assignment leaves him approximately $600 to $700 a month which is insufficient for him to live on, and cites *McEachern* as his only authority.

¶9. Jean has a total monthly income of $1,170, which consists of $720 per month in unemployment benefits and the $450 per month she receives in child support from David.[2] Out of her income, Jean was ordered to pay the first mortgage on the marital residence in the amount of $506 per month, and the consumer accounts owed to McRae's, Gayfer's, Visa, and Sherwin-Williams, which are approximately $210 per month.

¶10. "A standard of living beyond the father's financial ability to provide cannot be imposed upon him." *McEachern*, 605 So.2d at 813 (citing *Adams v. Adams*, 467 So.2d 211, 215 (Miss. 1985)). However, in this case, the chancellor found that, although Jean would have been entitled to an award of alimony, the child support and other debt payments rendered David's assets insufficient to support an award of alimony. Although this may impact his living style, the amount is within the guidelines prescribed by Miss. Code Ann. § 43-19-101 (Supp. 1998), and the children are the focal concern here.

¶11. Jean and the children were awarded the use and possession of the marital home. David's principal point is that the chancellor should have ordered the marital home sold and the proceeds used to satisfy the mortgages on the residence. The chancellor is required to evaluate the division of marital assets by these guidelines and to support his decision with findings of fact and conclusions of law for purposes of appellate review. *See Ferguson v. Ferguson*, 639 So.2d 921, 928 (Miss. 1994). A review of the record reveals that the chancellor was not manifestly erroneous in the property divisions and debt assignments and his decision is affirmed as to this issue.

## III. WHETHER THE LOWER COURT ERRED IN AWARDING ATTORNEY FEES?

¶12. The chancellor found that Jean incurred a total of $2,205 in legal fees and expenses for 28 hours of legal work. The chancellor found that Jean clearly established an inability to pay because she was unemployed at the time of trial and her only income was in the form of unemployment benefits. Further, David had $2,500 in a savings account that was left over from his unilateral sale of the family van.

¶13. The general rule is that if a party is financially able to pay his attorney fees he should do so, though this is a matter which is entrusted to chancellor's sound discretion. *Anderson v. Anderson*, 692 So.2d 65, 74 (Miss. 1997). The factors considered by the chancellor are consistent with those previously enumerated by this Court. See *Bredemeier v. Jackson*, 689 So.2d 770, 778 (Miss. 1997); *Bruce v. Bruce*, 687 So.2d 1199, 1203 (Miss. 1996); *Rogers v. Rogers*, 662 So.2d 1111, 1116

(Miss. 1995). The chancellor did not abuse his discretion in awarding Jean $2,205 in attorney fees.

## CONCLUSION

¶14. The record contains substantial evidence to support the chancellor's granting Jean a divorce on the grounds of habitual cruel and inhuman treatment. The chancellor was not manifestly erroneous in his determinations of property distribution and debt assignment. There was no abuse of discretion in awarding Jean attorney fees. Finding no error, the decision of the chancellor is affirmed.

**¶15. AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**

1. The chancery judges of the Fourteenth Chancery Court District recused themselves because the Appellee's father, Jacob Pongetti, is a member of the Lowndes County Bar.

2. Jean was laid off shortly before the trial began and is currently seeking new employment.