# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-CA-00671-SCT

*DOUGLAS L. JOHNSON*
*v.*
*CLEMMIE JO JOHNSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/21/2001 |
| TRIAL JUDGE: | HON. DOROTHY WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JEFFREY CARTER SMITH |
| ATTORNEY FOR APPELLEE: | CARRIE A. JOURDAN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 08/15/2002 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/5/2002 |

**BEFORE SMITH, P.J., WALLER AND CARLSON, JJ.**

**SMITH, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Douglas L. Johnson appeals to this Court from an order and decree of divorce entered in the Chancery Court of Lowndes County. This action was originally filed by Clemmie Jo Johnson on November 18, 1999, seeking a divorce on the grounds of adultery and habitual cruel and inhuman treatment. The defendant in this action, Douglas answered the petition on December 1, 1999 and filed a counterclaim for damages resulting from slander and intentional infliction of emotional distress. On May 30, 2000, Douglas amended his answer to include an allegation of adultery against Clemmie Jo Johnson. The case was heard by the Chancery Court of Lowndes County on September 19, 2000. On January 31, 2001, the chancellor entered her opinion denying Clemmie Jo Johnson's complaint for divorce and granting Douglas's claim for a divorce on the grounds of adultery, but the opinion denied Douglas's claims for slander and intentional infliction of emotional distress. A decree of divorce was filed on March 21, 2001. The opinion and decree ordered:

1. That the marital home be sold and the proceeds be divided equally.

2. That the money in the parties' joint checking account be divided equally.

3. That the assets of various retirement accounts were accumulated during the marriage and that the

proceeds from those should be divided equally.

4. That each party was entitled to the household goods that were currently in his or her possession.

5. The opinion denied alimony and attorney's fees to either party, and

6. Dismissed Douglas L. Johnson's claims for tort damages for slander and intentional infliction of emotional distress.

It is from this judgment that Douglas L. Johnson now appeals to this Court.

## FACTS

¶2. Douglas L. Johnson ("Douglas") and Clemmie Jo Johnson ("Clemmie") were married on July 31, 1993 in Pike County, Kentucky. They subsequently moved to Columbus, Mississippi, and took up residence there. Douglas worked as a hospital administrator at Baptist Memorial Hospital Golden Triangle Region ("BMH/GTR"), and Clemmie worked as a RN Physician's Assistant for a local neurosurgeon. Douglas had a yearly income of approximately $120,000, whereas, Clemmie had a yearly income of between $50,000 and $ 70,000. On or around September 3, 1999, Douglas moved out of the marital home and took up a separate residence.

¶3. On November 18, 1999, Clemmie filed for divorce pleading adultery and cruel and inhumane treatment as grounds. Clemmie sought a divorce, periodic alimony payments, an equitable division of all marital assets, and reasonable attorney fees. From the record it appears that in the few months preceding Douglas's moving out of the marital home, Douglas had begun a developing affair with another woman. Douglas however contested the grounds of adultery on his contention that he and the other woman never had a sexual relationship. Later on, Douglas amended his answer and cross-complaint to allege a newly found allegation that Clemmie was having an affair with another man.

¶4. Douglas's financial affidavit filed in January 2000 and amended in October 2000 reflects that he has rights to the following assets:

| | |
|---|---|
| 1. Jefferson Pilot (Roth IRA) | $ 2,300.00 |
| 2. Physician's Life (Annuity HCA Money Plan) | $ 13,293.00 |
| 3. Copeland (Annuity Retirement) | $ 19,050.00 |
| 4. Baptist (Retirement) | $ 64,624.00 |
| 5. HCA Columbia Stock (Emp. Ret. Stock) | $ 19,155.00 |
| 6. Douglas & Clemmie (NBC CD) | $ 31,900.00 |
| Total Value | $150,322.00 |

At trial Douglas testified that he had used the National Bank of Columbus CD for living expenses over the two years between moving out and the hearing. He also testified that the BMH/GTR was not as fully funded as originally maintained because he had been terminated by BMH/GTR following a conversation Clemmie had with hospital administrator Stuart Mitchell. Douglas contends that as a result of that conversation, he lost his job as a hospital administrator with BMH/GTR. At the time of the hearing he was still unemployed

and living off of savings.

¶5. Clemmie testified that she did not handle the financial affairs of the couple and that it was her understanding that they were using her salary for living expenses and using Douglas's for saving and investing. She also testified that she was not present when Douglas moved out of the house. Both parties submitted a 'wish list' of household items to the court for equitable distribution.

¶6. The trial court granted a divorce on Douglas's ground of adultery, denying Clemmie's claim for divorce. The chancellor further dismissed both parties contention for cruel and inhuman treatment and Douglas's claims for slander and intentional infliction of emotional distress. The chancellor ordered the marital home to be sold and the proceeds be divided equitably, the joint bank account was also divided equally, and the retirement accounts and savings were ruled to all be marital assets and divided equally. The Court ordered that each party keep the household property that was currently in their possession, and the court denied all claims for alimony and attorney's fees.

## STANDARD OF REVIEW

¶7. This Court's scope of review in domestic relations cases is limited. This Court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." ***Ferguson v. Ferguson***, 639 So.2d 921, 930 (Miss. 1994) (*citing **Bell v. Parker,*** 563 So.2d 594, 596-97 (Miss. 1990)). Therefore, this Court "is required to respect the findings of fact made by a chancellor supported by credible evidence and not manifestly wrong." ***Ferguson***, 639 So.2d at 930 (*citing **Newsom v. Newsom***, 557 So.2d 511, 514 (Miss. 1990)).

## DISCUSSION

¶8. The issues that Douglas raises on appeal are:

> **I. WHETHER THE COURT ERRED IN FAILING TO MAKE SPECIFIC FINDINGS OF FACT AND CONCLUSIONS OF LAW RELATING TO THE DISTRIBUTION OF THE ASSETS OF THE PARTIES.**

> **II. WHETHER THE COURT ERRED IN THE DISTRIBUTION OF THE CHECKING ACCOUNTS AND RETIREMENT ACCOUNTS; AND**

> **III. WHETHER THE COURT ERRED IN THE DISTRIBUTION OF HOUSEHOLD FURNISHINGS OF THE PARTIES**

¶9. Douglas contends that the chancellor failed to make specific findings of fact in the court's opinion as to the basis for its property division decision. The case of ***Ferguson v. Ferguson***, 639 So.2d 921 (Miss. 1994), established the guidelines that chancellors are to consider when deciding issues of marital property division. In that case, this Court directed "chancery courts [to] consider the following guidelines, where applicable, when attempting to effect an equitable division of marital property:

> 1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:

> a. Direct or indirect economic contribution to the acquisition of the property;

b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage; and

c. Contribution to the education, training or other accomplishment bearing on the earning power of he spouse accumulating the assets.

2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise.

3. The market value and the emotional value of the assets subject to distribution.

4. The value of assets not ordinarily, absent equitable factors to the contrary subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;

5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;

6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;

7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and

8. Any other factor which in equity should be considered.

*Ferguson*, 639 So.2d at 928. The phrase "where applicable" and guideline number eight indicate that this is a non-exclusive listing of factors that the chancellor may consider. *Id.* The chancellor must also "support their decisions with findings of fact and conclusions of law for purposes of appellate review." *Id.* This Court has stated that "the failure to make findings of fact and conclusions of law [is] manifest error requiring reversal on remand." *Sandlin v. Sandlin,* 699 So.2d 1198, 1204 (Miss. 1997). This Court must have these findings of fact because "this Court cannot determine whether the chancellor abused his discretion until he provides a record of his determination of both parties' nonmarital assets, of his equitable distribution in light of each parties nonmarital property, guided by the *Ferguson* factors, and, if necessary to do in equity, of any award of alimony." *Johnson v. Johnson*, 650 So.2d 1281, 1287 (Miss. 1995). The factors enumerated in *Ferguson* are not factors in guiding the classification of assets as marital or nonmarital property, they are factors that are to be considered when deciding which party should receive certain assets in the division of the marital property, and to justify any inequitable division that may occur. *Ferguson*, 639 So.2d at 928.

¶10. The procedure for dividing marital property was explicitly established in *Johnson v. Johnson*, 650 So.2d at 1287. That case states that:

First, the character of the parties' assets, i.e., marital or nonmarital, must be determined pursuant to *Hemsley*. The marital property is then equitably divided, employing the *Ferguson* factors as guidelines in light of each parties nonmarital property. *Ferguson*, 639 So.2d at 928. If there are sufficient marital assets which, when equitably divided and considered with each spouse's nonmarital assets, will adequately provide for both parties, no more need to be done. If the situation is such that

an equitable division of marital property, considered with each party's nonmarital assets, leaves a deficit for one party, then alimony based on the value of nonmarital assets should be considered. This process does not require divestiture of inherited or gift-acquired nonmarital property.

*Johnson*, 650 So. 2d at 1287.

¶11. Before making an equitable distribution of the estate, a chancellor must first classify the property as either a marital asset or a nonmarital asset. *Hemsley v. Hemsley*, 639 So.2d 909, 914-15 (Miss. 1994). For equitable division purposes, "assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." *Id.* Mississippi courts "assume for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic, or otherwise are of equal value." *Id.* at 915. Retirement plans are to be considered part of the marital estate if the value of the plans were accumulated during the marriage. *Id.*

¶12. The chancellor's order in this case fails to make the specific findings of fact and conclusions of law in regards to the *Ferguson* factors of equitable distribution. The chancellor's opinion states that "the first analysis that is required under *Ferguson v. Ferguson . . .* is a determination of 'marital assets' or 'marital property'." The opinion later states that "in *Ferguson*, the Court outlined the factors to be considered in the equitable distribution of properties," and then proceeds to list the enumerated factors of the *Ferguson* analysis. The trial court then proceeds, with a cursory explanation of factual factors considered, to classify the major items of the parties as either marital or nonmarital assets. In its references to the trial testimony in the case, the court failed to clearly state which *Ferguson* factor the evidence supports. Its findings of fact on the record merely go to the classification of the property as marital, it does not instruct this Court as to which factors the trial court found helpful in performing an equitable division of the property. This failure to make findings of fact and conclusions of law to justify its division of the property, as required by *Ferguson* and *Sandlin*, requires reversing and remanding for the trial court to make findings of fact on the record. These findings of fact should go to the equitable division of the property, not to the classification of the property as marital or nonmarital.

¶13. Further, the chancellor was manifestly wrong in the distribution of household items. Both parties submitted to the court 'wish lists' of items from the home that they wished to possess. Neither party testified that they believed that the post-separation expedited division of assets by Douglas on one day constituted a final division of property. That Douglas's left behind items like his grandmother's china and china hutch further indicates that the couple did not view the division of assets at that time as being a final resolution of the matter. The introduction of the 'wish lists' of furniture by both parties directly contradicts the court's finding that "the parties agreed at the time of separation to divide the household furnishings. In fact, Douglas moved out when Clemmie was not present and was free to remove any items he desired." Without specific findings of fact to justify the distribution, division of household goods in the amount of approximately $35,000.00 to one spouse, while the other only received approximately $4,000.00, can not be supported. To do so would only encourage couples who are separating to either take everything with them, or risk not receiving anything upon the division of the marital estate. This is the most egregious instance in the opinion that illustrates the need for the chancellor to make specific findings of fact and conclusions of law to justify their division of property. If the chancellor had stated on the record what factors she felt justified such an inequitable division of property, this Court would not look beyond her findings of fact, unless they were manifestly erroneous. However, the trial court's omission leaves this Court at a disadvantage; and therefore,

this Court must remand for findings of fact on the record to justify the distribution of assets.

## CONCLUSION

¶14. Because the chancellor failed to make specific findings of fact and conclusions of law on the record as required by *Ferguson* and *Sandlin,* to guide this Court in appellate review, the trial court's division of property must be reversed, and this case is remanded for the chancellor to divide the property after making specific findings of fact and conclusions of law on the *Ferguson* factors it considered in the division of property.

¶15. **REVERSED AND REMANDED**.

**PITTMAN, C.J., WALLER, COBB, DIAZ, EASLEY AND CARLSON, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. GRAVES, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**