875 So.2d 257 (2004)
Eddie TATE, Appellant,
v.
Carolyn TATE, Appellee.
No. 2003-CA-00280-COA.
Court of Appeals of Mississippi.
June 8, 2004.
*258 Gary L. Carnathan, Amory, attorney for appellant.
Ben Logan, attorney for appellee.
Before KING, C.J., BRIDGES, P.J., and CHANDLER, J.
CHANDLER, J., for the Court.
¶ 1. On June 14, 2000, the Lee County Chancery Court issued a judgment for divorce that incorporated a settlement agreement in which Eddie and Carolyn Tate agreed to divide all marital assets except for the couple's residence, which the settlement agreement provided "shall be disposed of by the Court." A hearing was held on October 19, 2000, but the decree resolving property issues did not issue until December 20, 2002, some eleven days prior to the expiration of the chancellor's term of office. Eddie appeals the decree asserting two issues which we quote verbatim:
1. Did the chancellor err in valuing the marital home at $20,000 to $30,000, minus a $10,000 lien, when the only evidence in the record was a professional appraisal valuing the home at $65,000, minus a $6,000 lien?
2. Did the chancellor err in awarding the wife 100% of the only significant marital asset?
In her brief, Carolyn "concedes that the value of the house should be $65,000. The principal amount of the outstanding indebtedness on the house at the time of the hearing was between $6,000 and $7,000." However, she contends that the chancery court was correct in finding that she was entitled to 100% of the home.
¶ 2. In finding that Carolyn should take 100% of the home's value, the chancery court correctly identified the Ferguson factors as being the applicable legal standard, but the chancery court's finding that all of the contributions Eddie made to the household went to every day living expenses, and none of the contributions went to debt service on the home's mortgage is not supported by the record. Additionally, the record is silent as to what contributions to the debt service on the home were made during the nearly two years from the taking of evidence to the entry of the decree, and during the sixteen months from the entry of the decree to the present. Therefore, we additionally find that upon remand, the chancery court should apply the Ferguson factors not only to the *259 facts adduced at the hearing but also give consideration to any additional facts not shown in the record before this Court. We expressly note that upon remand the chancery court may well find that the evidence supports a finding that Carolyn should be awarded 100% of the home. However, the record before us is ambiguous as to the relative equities of the parties at this date.

FACTS
¶ 3. Eddie and Carolyn married in 1973. Eddie had three children by a prior marriage, all of whom had reached their majority at the time Carolyn filed for the divorce. Three additional children were born to the marriage, but only one child, a son, had not reached his majority at the time of the hearing in the chancery court. In the 1980s the couple grew apart, and Eddie established a separate household. In 1989, Carolyn filed for divorce, but the divorce was never finalized. Also in 1989, Eddie filed for bankruptcy. Carolyn opposed this decision, but approximately $27,000 in debts for which the couple was jointly liable were either forgiven or avoided by creditors failing to prevent discharge. Pursuant to the bankruptcy judgment, Eddie paid $191 per week for five years. Following the completion of the bankruptcy payments in 1995, until October of 1999 when the disagreement ultimately leading to Carolyn filing for divorce occurred, Eddie directed the deposit of his Veterans Administration monthly disability check to be made to the couple's joint checking account. These checks varied from a low of $653 to a high of $788. The record indicates that some of these funds went to Carolyn's expenses and some went to Eddie's expenses at his separate household, but the testimony and documentary evidence is not conclusive as to the exact split of these funds between the two households. Moreover, the record indicates that Carolyn ceased claiming the youngest two children as dependents in 1996. Two other children left home in 1989, but one of them returned home for some unspecified time.
¶ 4. At the hearing, an appraisal was entered into evidence indicating that the home was worth $65,000. No testimony or any other evidence contradicted the appraisal.

ANALYSIS
¶ 5. An appellate court will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied. Johnson v. Johnson, 823 So.2d 1156, 1159(¶ 7) (Miss.2002) (citing Ferguson v. Ferguson, 639 So.2d 921, 930 (Miss.1994)). Furthermore, the chancellor's findings of fact will not be reversed if there is any substantial credible evidence which supports them. Dunaway v. Busbin, 498 So.2d 1218, 1221 (Miss.1986). The Ferguson factors are eight considerations that the Mississippi Supreme Court adopted for chancery courts to use when they equitably divide marital property.
1. Substantial contribution to the accumulation of the property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property,
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage, and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets;
2. The degree to which each spouse has expended, withdrawn or otherwise *260 disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise;
3. The market value and the emotional value of the assets subject to distribution;
4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse;
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution;
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity, and
8. Any other factor which in equity should be considered.
Ferguson, 639 So.2d at 928.
¶ 6. The record shows that the chancery court's finding as to the third Ferguson factor, the valuation of the home, was directly contrary to the only evidence presented. The home was worth $65,000. Carolyn asserted $6,000 to $7,000 debt was attached to the house, and nothing in the record disputed that assertion. As to the first Ferguson factor, the parties' contributions to acquisition of the home, the chancery court found none of the weekly and monthly payments Eddie made to discharge other debts and provide funds to Carolyn for her use went to paying debt on the home. No documentary evidence was introduced on this matter. Carolyn did not contend that Eddie failed to contribute money to the household. Rather, she contended that none of the approximately $11,580 Eddie paid to discharge bankruptcy debts, nor any of the unspecified amount of the Veterans Administration disability checks which she used for household expenses, should be considered to offset the other funds that she used to service the debt on the house. Most of the testimony of Eddie and Carolyn on this issue centered around the cost of vehicles, as many as eight, that the youngest son had various ownership or lease interests in, and how Eddie and Carolyn had co-signed for their acquisition. After Eddie ceased to pay for one of the vehicles, because the child had drug charges brought against him, Carolyn used the money Eddie contributed to the household to pay for the last of these vehicles. Carolyn said her credit would have suffered had she not done so; however, Eddie was under the same legal obligation to pay for the vehicle, and if he chose to allow the legal consequences to flow from his refusal to pay on a lease he had co-signed, that was a choice he was free to make. Further, if Carolyn chose to use the funds Eddie contributed to the household to continue to pay for the vehicle, and use her own funds to pay towards the debt on the house, that was a choice she was free to make. However, these choices did not prove that Eddie failed to contribute to the acquisition of the home. Moreover, even assuming that had Carolyn chosen to allow the lessor to repossess the vehicle, and that her credit would have suffered, her ownership stake in the house would not have been effected.
¶ 7. The law of this state requires equitable, not equal, distribution of the marital estate. Peterson v. Peterson, 797 So.2d 876 (¶ 17) (Miss.2001). Equitable division is the fair determination of the division of marital property based on both spouses' contributions during the marriage. *261 Traxler v. Traxler, 730 So.2d 1098 (¶ 21) (Miss.1998). Nothing in this opinion should be read to hold that Eddie did indeed contribute to paying toward the debt on the home, or that he is entitled to any portion of the home's value. However, on remand, the chancery court must state findings of fact as to which party contributed whatever percentage the court determines, and these findings of fact must be supported by evidence.
¶ 8. THE JUDGMENT OF THE LEE COUNTY CHANCERY COURT IS REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. THE APPELLEE IS ASSESSED COSTS OF THIS APPEAL.
KING, C.J., BRIDGES P.J., THOMAS, LEE, IRVING, MYERS AND GRIFFIS, JJ., CONCUR. SOUTHWICK, P.J., NOT PARTICIPATING.