959 So.2d 8 (2006)
Daughn SPAHN, Appellant
v.
Joseph Gilbert SPAHN, Appellee.
No. 2005-CA-00368-COA.
Court of Appeals of Mississippi.
September 26, 2006.
Rehearing Denied March 20, 2007.
*10 T. Swayze Alford, attorney for appellant.
H.R. Garner, Hernando, attorney for appellee.
Before KING, C.J., GRIFFIS and BARNES, JJ.
KING, C.J., for the Court.
¶ 1. Daughn Spahn appeals the Tate County Chancery Court's denial of her motion for a new trial, in which she alternatively sought to alter or amend the judgment of divorce. Daughn raises fourteen assignments of error, which we have condensed to four, since a majority of Daughn's issues involve equitable distribution. Finding no error, we affirm.

FACTS
¶ 2. Daughn and Joseph Spahn were married on December 10, 1994. In 1997, Daughn gave birth to Joseph Gunner Spahn, the Spahn's only child. Joseph's son from a previous marriage also lived with the Spahns. Joseph is the sole proprietor of M & R Construction and Supply Company, which he and his father founded in 1977 in Senatobia, Mississippi. Joseph purchased Spahn House in April of 1994, so that Daughn could run it as a bed and breakfast. Spahn House also served as the Spahn's residence. In 1996, Joseph conveyed a one-half interest in Spahn House to Daughn. Throughout the marriage, Joseph ran M & R while Daughn operated Spahn House. Joseph also received additional monthly income from renting out space in a warehouse he had owned since the early 1980s. In addition to running Spahn House, Daughn performed tasks for M & R such as answering telephone calls as well as hosting M & R business functions at Spahn House.
*11 ¶ 3. Daughn filed for a divorce on March 19, 2003, after which time Joseph moved out of the marital home and purchased a house on Camille Street in Senatobia. On August 19, 2004, Daughn and Joseph moved to withdraw adversarial grounds for divorce and proceed with an irreconcilable differences divorce. The parties left the issues of equitable distribution of marital assets, child support, alimony, and attorneys' fees to be decided by the chancellor. Their divorce was granted October 13, 2004.
I. WHETHER THE CHANCELLOR ERRED IN CALCULATING JOSEPH'S ADJUSTED GROSS INCOME FOR PURPOSES OF CALCULATING CHILD SUPPORT.
¶ 4. In reviewing domestic relations cases, this Court will not overturn a chancellor's findings which are based on substantial credible evidence unless the findings were manifestly wrong, clearly erroneous, or an incorrect legal standard was applied. Magruder v. Magruder, 881 So.2d 365, 369 (¶ 17) (Miss.Ct.App.2004).
¶ 5. Daughn claims that the chancellor erred in accepting at face value Joseph's Rule 8.05 financial declaration to calculate child support. Daughn contends that the figure submitted and accepted was artificially low for the sole proprietor of a business with a gross annual business income of $1,421,873. Joseph's Rule 8.05 financial statement showed a net income of $2,796 per month. The chancellor noted in his opinion that Daughn contended that improper deductions, such as automobile payments and entertainment expenses, were made in calculating his net income, yet Daughn offered no specific proof of the amounts of the improper deductions.
¶ 6. Carlton Dixon, the court-appointed CPA and accountant for M & R, testified that Joseph's adjusted gross income, according to his 2003 tax return, was $45,248 and that his taxable income was $34,398. Joseph testified that his income varies from year to year, and after taxes he earns between $30,000 and $50,000. Joseph admitted that although his 2003 tax return reflected an adjusted gross income of $45,248, he had deposited $50,302 in his personal checking account in 2003. Therefore, based on Joseph's testimony, the chancellor imputed additional income of $500 dollars a month to Joseph, making his adjusted gross income $3,296.14 per month. The chancellor then ordered Joseph to pay fourteen percent of that figure, $461.45, per month in child support, in accordance with Mississippi Code Annotated XX-XX-XXX (Rev.2004).
¶ 7. We find that the chancellor's finding of Joseph's adjusted gross income for purposes of calculating child support was based on the substantial credible evidence provided by Joseph's Rule 8.05 financial statement, Joseph's 2003 federal tax return, Joseph's testimony, and Dixon's testimony. We also find that the chancellor correctly applied Mississippi Code Annotated XX-XX-XXX in determining the amount of child support. This issue fails.
II. WHETHER THE CHANCELLOR ERRED IN HIS CLASSIFICATION AND DIVISION OF MARITAL PROPERTY.
¶ 8. Daughn claims that the chancellor's division of marital property was erroneous with respect to Spahn House and its contents, the life insurance policies, Joseph's IRA, and a number of other assets. Daughn also argues that the chancellor erred in his classification of the warehouse and lot on Tate Street and the house on Camille Street as Joseph's non-marital property.

*12 Classification

¶ 9. A chancellor's first step in equitable distribution is classifying property as marital or non-marital property. Ericson v. Tullos, 876 So.2d 1038, 1040 (¶ 9) (Miss.Ct.App.2004). "Assets acquired or accumulated during the course of a marriage are subject to equitable division unless it can be shown by proof that such assets are attributable to one of the parties' separate estates prior to the marriage or outside the marriage." Hemsley v. Hemsley, 639 So.2d 909, 914 (Miss.1994). However, separate assets may lose their non-marital classification if commingled with marital assets or if used for familial purposes. Johnson v. Johnson, 650 So.2d 1281, 1286 (Miss.1994).
¶ 10. The relevant testimony regarding the warehouse and adjoining lot revealed that Joseph had owned the property since the early 1980s. He took out a mortgage on the property in 1998 to pay off the 1994 loan he obtained to purchase Spahn House. Joseph maintains a separate account at Senatobia Bank in which he deposits the rental income and from which he pays the mortgage, taxes, insurance, and maintenance of the property. Because Joseph acquired the warehouse prior to the marriage and did not commingle the proceeds from the warehouse, nor use the warehouse for family purposes, we find that the chancellor was correct in classifying the warehouse as Joseph's non-marital property.
¶ 11. It is well established that property acquired through joint efforts during the course of marriage is deemed marital property. Johnston v. Johnston, 722 So.2d 453, 463 (¶ 28) (Miss 1998) (quoting Draper v. Draper, 627 So.2d 302, 305 (Miss.1993)). The course of the marriage, for purposes of classifying property as marital or non-marital, runs until the date of the divorce judgment. Deal v. Wilson, 922 So.2d 24, 28-29 (¶ 11) (Miss.Ct.App. 2005) (quoting McIlwain v. McIlwain, 815 So.2d 476, 479 (¶ 7) (Miss.Ct.App.2002)). The relevant testimony regarding the Camille Street property was that Joseph purchased the house for $37,000 in May 2003, two months after Daughn filed for a divorce. Joseph acquired a loan in the amount of $45,000 in order to purchase the house and make necessary repairs since the house had been damaged in a fire. Although Joseph used M & R employees for a portion of the renovations, he paid them from a separate account. At the time of trial, the Camille Street property was valued at $45,500, while $45,581.37 was owed on the property. Although the Camille Street property was purchased after the parties separated, but during the course of the marriage, the record reveals that it was not acquired through their joint efforts. We find that the chancellor was correct in classifying the Camille Street house as Joseph's non-marital property. Even were we to hold the chancellor's classification to be error, it would be harmless error. The value of this property is exceeded by the outstanding mortgage. There is no equity in the house. At worst the chancellor's actions can be said to have negated an award of real property, by also awarding with it the outstanding indebtedness.

Equitable Distribution of Marital Property
¶ 12. In reviewing questions of equitable distribution, this Court will examine the chancellor's application of the Ferguson factors. Phillips v. Phillips, 904 So.2d 999, 1001 (¶ 8) (Miss.2004) (citing Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994)). However, we will not conduct a Ferguson analysis anew, rather we review the chancellor's application to ensure that there has been no abuse of discretion. *13 Id. A chancellor must consider the following eight factors when conducting an equitable distribution of marital property:
(1) Substantial contribution to the accumulation of the property, including these factors: direct or indirect economic contribution to the acquisition of the property, contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family duties and duration of the marriage, and contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets,
(2) the degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets by agreement, decree or otherwise,
(3) the market value and the emotional value of the assets subject to distribution,
(4) the value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse,
(5) tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution,
(6) the extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties;
(7) the needs of the parties for financial security with due regard to the combination of assets, income and earning capacity; and,
(8) any other factor which in equity should be considered.
Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).
¶ 13. The chancellor classified the following property as marital: M & R Construction Co., Spahn House, the furnishings in Spahn House, the Protective Life insurance policy, the Jefferson Pilot life insurance policy, the Guardian Life insurance policy, the joint E-trade account, AIM mutual funds, and 200 shares in First Tennessee stock. Based on the evidence presented by the parties, the chancellor assigned value to each item of marital property, and determined that the total value of all marital property was $434,063.50. Next, the chancellor conducted a Ferguson analysis and made the following findings. Throughout the marriage, Daughn operated Spahn House, which indirectly contributed to the growth of M & R Construction. Daughn also performed many duties, although minor in comparison to Joseph's contributions, for M & R Construction which attributed to its growth. Neither party expended, withdrew, nor disposed of any marital assets to any great degree. Further, the furnishings within Spahn House, the Protective Life insurance policy, the Jefferson Pilot life insurance policy, the Guardian Life insurance policy, the joint E-trade account, the AIM mutual funds, and the 200 shares of First Tennessee stock were all acquired during the course of the marriage through the joint and equal efforts of both parties. The chancellor then awarded Daughn Spahn House and its contents, 100 shares of First Tennessee stock, and a one-half interest in the AIM mutual funds, for a total award of $211,196.50 of the marital property. Joseph was awarded M & R Construction, the Protective Life Policy, the Jefferson Pilot policy, the Guardian Life policy, one-half of the AIM account, and 100 shares of First Tennessee stock, *14 for a total award of $222,867. Therefore, Daughn received 48 percent of the marital estate, while Joseph received 52 percent of the marital estate.
¶ 14. Equitable distribution does not require equal distribution. Dobbs v. Dobbs, 912 So.2d 491, 493 (¶ 7) (Miss.Ct. App.2005). Rather, equitable distribution is a fair division of marital property based on each spouses' contribution to assets during the marriage. Tate v. Tate, 875 So.2d 257, 261 (¶ 7) (Miss.Ct.App.2004) (citing Traxler v. Traxler, 730 So.2d 1098 (¶ 21) (Miss.1998)). Although the chancellor did not apply each of the Ferguson factors, he permissibly addressed only those factors which he deemed applicable to the property in question. Owen v. Owen, 798 So.2d 394, 399 (¶ 13) (Miss.2001) (citing Carrow v. Carrow, 741 So.2d 200, 202 (¶ 10) (Miss.1999)). We find that the chancellor conducted a sufficient Ferguson analysis, made findings supported by substantial credible evidence, and equitably divided the marital property. Therefore, we affirm the chancellor's equitable division of the martial property.

Remaining Personal Property
¶ 15. Daughn argues that the chancellor erred in failing to address several items of personal property which Joseph possessed and which Daughn claims are marital assets which should have been included in the equitable distribution.[1] However, after conducting a thorough Ferguson analysis and equitably dividing the marital assets, the chancellor stated in his order, "Unless specifically addressed herein, each party may keep and become the sole owner of any personal property in their respective possessions as of this time." We find that the chancellor did not abuse his discretion in allowing each party to retain the remaining personal property in their respective possessions.
III. WHETHER THE CHANCELLOR ERRED WHEN HE FAILED TO REQUIRE JOSEPH TO PAY FOR DAUGHN'S MEDICAL INSURANCE COVERAGE AS HAD BEEN PROVIDED IN THE TEMPORARY SUPPORT ORDER.
¶ 16. An agreed temporary order filed on May 23, 2003, provided that Joseph would maintain Daughn's medical insurance. On August 19, 2004, the chancellor granted a joint motion of the parties to withdraw their adversarial grounds for divorce, and instead proceed with an irreconcilable differences divorce. While Daughn and Joseph came to an agreement as to many terms of the divorce, they left many issues to be decided by the chancellor, including what, if any, medical, disability or life insurance should be maintained by each party. The chancellor's judgment and accompanying opinion are silent as to whether either party must maintain medical insurance for the other.
¶ 17. Where a chancellor's findings are silent as to a particular issue, there is a presumption that the chancellor resolved the issue in favor of the appellee. Love v. Barnett, 611 So.2d 205, 207 (Miss. *15 1992). Additionally, "if there are sufficient marital assets which, when equitably divided and considered with each spouse's non-marital assets, will adequately provide for both parties, no more need be done." Lauro v. Lauro, 847 So.2d 843, 848 (¶ 13) (Miss.2003) (quoting Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994)). Not only did Daughn receive $211,196.50 of assets in the distribution of marital property, or forty-eight percent of the marital estate, but also she received an award of $56,835.25 in lump sum alimony. Additionally, Daughn presented no proof of any special medical needs that she may have. Therefore, we find that the chancellor's failure to address whether Joseph must maintain Daughn's medical insurance was resolved in the negative.
IV. ATTORNEY'S FEES
¶ 18. Daughn argues on appeal that she accumulated $49,000 in attorney's fees, and that she received no liquid assets in the equitable distribution from which she could pay her attorney's fees. The award of attorney's fees is left to the discretion of the trial court. Langdon v. Langdon, 854 So.2d 485, 495 (¶ 40) (Miss. Ct.App.2003) (citing Labella v. Labella, 722 So.2d 472, 475 (¶ 13) (Miss.1998)). As a general rule, if a party is financially capable of paying his or her own attorney's fees, that party should do so. Id. In deciding whether to award attorney's fees, the chancellor should consider each parties' financial ability. Id. The chancellor in the case sub judice found that although Daughn sought attorney's fees, she demonstrated no inability to pay her own attorney's fees. We find that the chancellor's decision is supported by substantial credible evidence. Daughn received an award of lump sum alimony, 100 shares of First Tennessee stock, and Spahn House, a potentially income-producing business.
¶ 19. THE JUDGMENT OF THE TATE COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES ISHEE AND ROBERTS, JJ., CONCUR.
NOTES
[1] The items of personal property in question are a Jeep Cherokee, an antique Jeep, a Ford pick-up truck, and a gun collection. The Jeep Cherokee, while titled in Joseph's name, was purchased for and is driven by Joseph's son from a previous marriage. Daughn's testimony at trial revealed that she was uncertain whether the antique Jeep was purchased prior to or during the marriage. There is no testimony in the record regarding the Ford pick-up truck. Regarding the gun collection, Daughn testified that Joseph owned at least half of the guns prior to the marriage and received other guns during the marriage as gifts and inheritances. No proof was presented to show that any of the guns obtained during the marriage were purchased with marital assets.