CARLTON, J.,
Dissenting.
¶47. I respectfully dissent from the majority’s opinion on two grounds. First, I submit that the chancellor abused his discretion when he failed to set forth findings of fact and conclusions of law when he adopted verbatim Ronnie’s proposed order because the parties disputed what constituted a 50/50 split. Second, the record conveys that the chancellor misapplied the governing law under Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994) in distributing the Rodriguezes’ marital property, specifically, Anne’s use of marital assets for living expenses pending their divorce.
¶ 48. I submit that the record fails to contain sufficient facts for the Court to rely on any implied findings supporting the portion of the chancellor’s decision regarding the couple’s use of marital assets pending their divorce and its effect on final distribution. In utilizing either a heightened or de novo standard of review, I submit that the Court should remand this case to the chancellor to set forth findings of fact and conclusions of law as to what constituted reasonable living expenses or unreasonable dissipation of marital assets by the parties so that the equity of the chancellor’s division may be appropriately reviewed.
I.The chancellor abused his discretion in adopting verbatim Ronnie’s proposed order without making findings of fact and conclusions of law to support his decision.
¶ 49. Marital property consists of those assets acquired and accumulated during the marriage which are subject to equitable distribution by the chancellor. Berryman v. Berryman, 907 So.2d 944, 947(¶ 13) (Miss.2005) (citing Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994)). In Ferguson, the supreme court created a list of factors that chancellors are to use as a guideline to create a fair division of marital property. Ferguson, 639 So.2d at 928. These include the following factors:
1. [A spouse’s] substantial contribution to the accumulation of marital property. Factors to be considered in determining contribution are as follows:
a. Direct or indirect economic contribution to the acquisition of the property;
b. Contribution to the stability and harmony of the marital and family relationships as measured by quality, quantity of time spent on family, duties and duration of the marriage; and
c. Contribution to the education, training or other accomplishment bearing on the earning power of the spouse accumulating the assets.
2. The degree to which each spouse has expended, withdrawn or otherwise disposed of marital assets and any prior distribution of such assets and any prior distribution of such assets by agreement, decree or otherwise.
3. The market value and emotional value of assets subject to distribution.
*734 4. The value of assets not ordinarily, absent equitable factors to the contrary, subject to such distribution, such as property brought to the marriage by the parties and property acquired by inheritance or inter vivos gift by or to an individual spouse[.]
5. Tax and other economic consequences, and contractual or legal consequences to third parties, of the proposed distribution!.]
6. The extent to which property division may, with equity to both parties, be utilized to eliminate periodic payments and other potential sources of future friction between the parties!.]
7. The needs of the parties for financial security with due regard to the combination of assets, income and earning capacity!.]
8. Any other factor which in equity should be considered.
Id. Not only are chancellors directed to use the Ferguson factors, they are also directed to support their decisions with findings of fact and conclusions of law for the purpose of appellate review. Id.
¶ 50. Generally, this Court will not reverse findings of fact made by a chancellor when those findings are supported by substantial credible evidence in the record. Tricon Metals & Servs., Inc. v. Topp, 516 So.2d 236, 238 (Miss.1987). In reviewing a chancellor’s judgment, this Court does not conduct a new Ferguson analysis. Spahn v. Spahn, 959 So.2d 8, 12(¶ 12) (Miss.Ct.App.2006). Rather, the Court’s duty is to review the chancellor’s decision under an abuse of discretion standard. Gray v. Gray, 909 So.2d 108, 110(¶7) (Miss.Ct.App.2005).
¶ 51. When there are no findings of fact to review from the chancellor’s decision, the Court can invoke the doctrine of implied findings. See Tricon Metals, 516 So.2d at 238. In such a situation, the Court assumes that the chancellor made “determinations of fact sufficient to support the judgment.” Pace v. Owens, 511 So.2d 489, 492 (Miss.1987) (citing Rives v. Peterson, 493 So.2d 316, 317 (Miss.1986)). However, “[u]se of the implied findings doctrine ... is not always possible” when the court does not “have ... enough help from the [chancellor]” to “derive the findings [he] ought to have made.” Tricon Metals, 516 So.2d at 238 (quoting Pace, 511 So.2d at 492).
¶ 52. Our Court gives great deference to a chancellor’s judgment “because [the chancellor] is in a better position to determine what action would be fair and equitable in the situation than a court of appellate jurisdiction.” Turnley v. Turnley, 726 So.2d 1258, 1265(¶ 23) (Miss.Ct.App.1998) (citation omitted). Generally, the place for initial fact finding is in a trial court, not the appellate court. See Educational Placement Servs. v. Wilson, 487 So.2d 1316, 1320 (Miss.1986).
¶ 53. It is within a chancellor’s sound discretion to adopt verbatim the findings of fact and conclusions of law submitted by a party. Thomas v. Scarborough, 977 So.2d 393, 396(¶ 9) (Miss.Ct.App.2007) (citation omitted). However, “[w]here the chancellor adopts, verbatim, findings of fact and conclusions of law prepared by a party ... this Court analyzes such findings with greater care and the evidence is subjected to heightened scrutiny.” Gutierrez v. Bucci, 827 So.2d 27, 31(¶ 13) (Miss.Ct.App.2002) (quoting Brooks v. Brooks, 652 So.2d 1113, 1118 (Miss.1995)).
¶ 54. The problem with adopting a party’s findings verbatim is “that these findings simply are not the same as findings independently made by the trial judge after impartially and judiciously sifting through the conflicts and nuances of the case.” Thomas, 977 So.2d at 396(¶ 9). *735 Moreover, this Court has held that it is error for a chancellor to adopt a party’s proposed findings when the evidence does not reasonably support the chancellor’s findings. Id.
¶ 55. For example, in Gray, 909 So.2d at 111 (¶¶ 11-12), the supreme court reversed and remanded a case when it found that the chancellor provided neither any Ferguson analysis nor any explanation for his decision and merely announced his judgment, divided the property, and awarded alimony. Similarly, in Sandlin v. Sandlin, 699 So.2d 1198, 1204 (Miss.1997), the supreme court reversed and remanded a case in which it found that the court “could not evaluate the basis that [the chancellor had] used to determine the division of property.” I respectfully submit that since no agreement existed between Ronnie and Anne as to what constituted a 50/50 split, the chancellor abused his discretion in adopting Ronnie’s order without making his own findings in support of his decision. See Sandlin, 699 So.2d at 1204; Tricon Metals, 516 So.2d at 239; Snoddy v. Snoddy, 791 So.2d 333, 338(¶ 17) (Miss.Ct.App.2001); Forsythe v. Akers, 768 So.2d 943, 947(¶ 9) (Miss.Ct.App.2000); Gray, 909 So.2d at 111(¶ 12). Therefore, I submit that this case should be remanded to the chancellor to reflect his findings regarding whether a 50/50 split or an equitable result was achieved when he distributed the Rodriguezes’ property as he did.
¶ 56. A de novo review is warranted in a case where the chancellor adopts one party’s findings and misapplies the law. Brooks, 652 So.2d at 1118. I submit that the chancellor in this case, like the chan-eellor in Brooks, erred when he failed to make his own findings and, as discussed further under Section II below, apparently misapplied the law with respect to the dissipation of marital assets and reasonable living expenses. Therefore, as in Brooks, I submit that this case warrants a de novo review.
II. The chancellor misapplied the law under Ferguson when he distributed the Rodriguezes’ marital assets.
¶ 57. I submit that the chancellor erred when he failed to make his own findings of fact and conclusions of law under the Ferguson factors. Without such findings or conclusions, it appears that the chancellor misapplied the law regarding the dissipation of assets and living expenses. Therefore, I review de novo chancellor’s adopted findings. See Wilson v. Wilson, 811 So.2d 342, 344(¶ 6) (Miss.Ct.App.2001).
1. Contribution to Marital Property
¶ 58. I agree with the majority’s opinion under this factor.
2. Disposition and Distribution of Marital Assets
¶ 59. The majority finds under this factor that Anne withdrew considerable amounts of money from the couple’s joint accounts upon their separation and that Anne’s withdrawal was properly taken into account during the final calculation of the property division. Ronnie contends in his brief that Anne had been authorized under a “gentleman’s agreement”[3] that was reached in the presence of the chancellor to use up to $5,000 for living expenses pending their judgment of divorce.[4] In *736 contrast, Ronnie, who was receiving $4,046 in monthly income, was given no restrictions as to the amount of money he could spend.
¶ 60. Under our case law, ordinary and reasonable living expenses used during separation do not constitute a dissipation of marital assets. See Pittman v. Pittman, 791 So.2d 857, 865(¶22) (Miss.Ct.App.2001); see also Turnley, 726 So.2d at 1266(¶ 26). Additionally, marital assets are deemed to still be accumulating unless a separate maintenance order or temporary support order is entered. Marshall v. Marshall, 979 So.2d 699, 701(¶ 9) (Miss.Ct.App.2007) (citations omitted). Furthermore, this Court has stated that if there has been no maintenance or temporary support order entered, that neither party need consult the other before using marital assets for legitimate marital expenses. Barnett v. Barnett, 908 So.2d 883, 841(¶ 17) (Miss.Ct.App.2005).
¶ 61. For example, in Pittman, the Court stated that “if marital funds ... are used for legitimate expenses of both parties during a separation, the person who has been making the disbursements from the account does not [under the facts of this case] ... need to provide equivalent amounts of separate funds at the time of the actual divorce as part of a distribution of marital property.” Pittman, 791 So.2d at 865(1122).
¶ 62. Similarly, in Turnley, the Court affirmed the chancellor’s judgment that the wife had not “wasted” her husband’s $800 a month disability payments pending their divorce because she had used the payments to support herself and their children. Turnley, 726 So.2d at 1266(¶ 26). Because the wife had provided a reasonable explanation for the use of her husband’s disability payments, the chancellor found that she was not required to reimburse her husband. Id.
¶ 63. Here, no maintenance or temporary support order was entered before the Rodriguezes’ divorce. Moreover, Anne and Ronnie disagree on how much of the couple’s joint marital funds Anne spent pending their divorce. Ronnie argues that Anne spent $36,323.49 from the time of their separation to their judgment of divorce ten months later.
¶ 64. Anne and Ronnie agree that Anne spent $21,314.49 on legal fees pending their divorce. Assuming Ronnie was correct about Anne spending $36,323.49, this means that Anne spent, on average, approximately $1,500 per month pending their divorce. In contrast, Ronnie received approximately $40,000 in income pending their divorce. The chancellor awarded an investment account of $52,300 to Ronnie “to offset the cash assets that [Anne] withdrew prior to the separation of the parties and spent during the course of [the] litigation.” Because of this specific distribution, Ronnie was awarded $211,106 in account assets, and Anne was awarded $198,551 in account assets.
¶ 65. Since the chancellor did not provide any findings as to how much Anne or Ronnie spent pending their divorce and since there was no order of the court enforcing the “gentleman’s agreement,” I would remand the case for the chancellor to make findings of fact and conclusions of law regarding how much of the marital assets were spent by each party and whether such expenditures were reasonable. See Pittman, 791 So.2d at 864-65(¶ 21).
*737 3. Market and Emotional Value of Assets
¶ 66. Ronnie and Anne submitted differing market values for various assets. Specifically, the Rodriguezes’ hunting camp, camp-trailer, and boat and boat trailer were assigned strikingly different values by Ronnie and Anne. The chancellor’s opinion fails to reflect if the value of these items was determined or even considered in the final distribution of the property. In order to achieve an equitable division of assets, the fair market value of the assets should be considered before any allocation. See id. at 867(¶ 37).
¶ 67. In Wilson, the Court reversed the chancellor’s judgment and remanded the case because he assigned several items to one party without assigning them any value. Wilson, 811 So.2d at 346(¶ 14). The Court stated that “some actual value should be assigned to [the items] to insure that the division [was] equitable.” Id. at (¶ 13). I submit that this case should be remanded on this issue for findings of fact in accordance with the analysis set forth in Wilson. See also Aron v. Aron, 832 So.2d 1257, 1260 (¶¶ 14-16) (Miss.Ct.App.2002) (reversing and remanding so chancellor could make valuations of marital property in order to create an equitable distribution).
4. Value of Assets Not Ordinarily Subject to Distribution
¶ 68. I agree with the majority’s opinion under this factor.
5. Tax Consequences of Distribution
¶ 69. The majority states: “Ronnie would be allocated the mortgage interest deduction because he was paying the mortgage on the home until such time that it could be sold.” It appears that the majority assumed that the chancellor awarded Ronnie the deduction because he was paying the monthly mortgage payments. However, the chancellor’s opinion contains no such analysis, similar or otherwise, regarding why Ronnie was to be awarded the mortgage deduction and not Anne. According to the record, Ronnie was paying $730 a month on the mortgage, and while doing so, he enjoyed the privilege of living in the marital home pending their divorce. At the same time, Anne was paying $200 a month in rent to her daughter.
¶ 70. Under Hemsley, a spouse working as a homemaker will be presumed to contribute equally as the wage-earning spouse. Hemsley, 639 So.2d at 915. In this case, Ronnie was the primary breadwinner, and Anne worked within the home for the majority of their thirty-seven-year marriage. Because there are no explicit or implicit findings in the chancellor’s opinion as to why Ronnie received the entire deduction and because no agreement existed as to what constituted a 50/50 split, I would remand this case to the chancellor to make findings on this issue.
6.Alimony
¶ 71. “Upon remand, [a] chancellor must reconsider not only the issue of equitable distribution, but also the award[] of alimony ... after he has properly divided the marital assets” as directed by Ferguson. Lauro v. Lauro, 847 So.2d 843, 848(¶ 12) (Miss.2003). “If the situation is such that an equitable division of marital property, considered with each party’s non-marital assets, leaves a deficit for one party, then alimony based on the value of non-marital assets should be considered.” Id. at (¶ 13) (citation omitted). In Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993), the supreme court set out twelve factors for the chancellor to consider in making an award of alimony.
¶ 72. I contend that this case should be remanded to the chancellor to reconsider the equitable distribution of the Rodri-guezes’ property under the Ferguson fac *738 tors and, upon doing so, consider the Armstrong factors in order to determine whether Anne suffers a deficit.
7. Needs of the Parties for Financial Security
¶ 73. I find that the case should be remanded for the chancellor to consider this issue after applying the Ferguson fac-ors to the facts of the case. See Drumright v. Drumright, 812 So.2d 1021, 1025(¶ 9) (Miss.Ct.App.2001). The chancellor should then make findings of fact and conclusions of law supporting his decision under this issue.
8. Any Other Factors
a. Ronnie’s Adultery
¶ 74. The Court has stated that marital misconduct is a proper factor for a chancellor to consider in the equitable distribution of marital property when the “misconduct places a burden on the stability and harmony of the marital and family relationship.” Ory v. Ory, 936 So.2d 405, 413(¶ 23) (Miss.Ct.App.2006) (quoting Singley v. Singley, 846 So.2d 1004, 1007(¶ 8) (Miss.2002)). It is within the chancellor’s discretion in this case to consider Ronnie’s adulterous conduct and its impact, if any, on the destruction of the marriage. See Sullivan v. Sullivan, 990 So.2d 783, 788(¶ 19) (Miss.Ct.App.2008).
b. Attorney’s Fees
¶ 75. Finally, Anne cross-appeals the chancellor’s decision denying her an award of attorney’s fees. It is within the chancellor’s discretion to award attorney’s fees. Spahn, 959 So.2d at 15(¶ 18). The chancellor should consider each party’s financial ability when deciding whether to award attorney’s fees. Id. Assets received as part of an equitable distribution can be considered in determining a party’s ability to pay his attorney’s fees. Hankins v. Hankins, 729 So.2d 1283, 1286(13) (Miss.1999) (reversing and remanding for chancellor to consider the $210,000 award in equitable distribution in determining the party’s ability to pay attorney’s fees). Since I would remand this case for findings of fact and conclusions of law under Ferguson, I submit that the chancellor should also reconsider an award of attorney’s fees in light of his Ferguson analysis. See Pittman, 791 So.2d at 870-71 (¶¶ 54-57).
CONCLUSION
¶ 76. I respectfully submit that the chancellor abused his discretion and apparently misapplied the law when he adopted Ronnie’s proposed order verbatim without supporting Ferguson findings and conclusions of law because the parties did not reach an agreement as to what constituted a 50/50 split of the marital property. Without such findings, we cannot review whether sufficient evidence supports his decision. I recognize that due to crushing caseloads, trial courts must, at times, rely on party submissions. Thomas, 977 So.2d at 396(¶ 9). However, such reliance is error when the evidence does not substantially support the chancellor’s findings. See id. For the above reasons, I would reverse and remand this case for findings of fact and conclusions of law under Ferguson.
GRIFFIS, J., JOINS THIS SEPARATE OPINION.

. It should be noted that the chancellor did not issue an order enforcing this "agreement.”

. Under this "gentlemen's agreement,” Anne would have been entitled to spend, on average, $500 a month in living expenses. Under federal poverty guidelines, an annual income of $10,400 for a household of one is considered the threshold of poverty level. U.S. Dep’t of Health & Human Servs., 2008 DHS Poverty Guidelines of 2008, http://aspe.hhs. gov/poverty/08Poverty.shtml (last visited on January 7, 2009). In light of the federal *736 poverty guidelines and the Rodriguezes' available assets, I submit that such an agreement was not equitable, reasonable, or fair.